STATE OF FLORIDA, DEPARTMENT OF BUSINESS REGULATION, State of Florida, Department of Revenue, State of Florida; and the City of Tampa, Florida, Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF the INTERIOR and Donald P. Hodel, Secretary of the Interior, Defendants-Appellees,

Seminole Tribe of Florida, Defendant-Intervenor-Appellee.

No. 84–3246.

United States Court of Appeals, Eleventh Circuit.

Aug. 16, 1985.

Harold F.X. Purnell, Sandra P. Stockwell, Gen. Counsel, Dept. of Business Regulation, Joseph C. Mellichamp, Asst. Atty. Gen., Tallahassee, Fla., for plaintiffs-appellants.

**1250**

Wendy B. Jacobs, Appellate Section, U.S. Dept. of Justice, Washington, D.C., J. Carol Williams, Martin W. Matzen, Charles W. Ross, David T. Henniger, St. Petersburg, Fla., for defendants-appellees.

Before KRAVITCH and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

This litigation involves the combined efforts of the State of Florida, the Florida Department of Business Regulation, the Florida Department of Revenue, and the City of Tampa (appellants), to challenge the Secretary of the Interior's decision to acquire a tract of land in trust for the benefit of the Seminole Indian Tribe. The court below dismissed their complaint on sovereign immunity and standing grounds. We affirm as to sovereign immunity; accordingly we do not reach the standing question.

## I. BACKGROUND

In 1980, the City of Tampa began excavation of land near the former site of Fort Brook, an Army outpost that had been used in the nineteenth century relocation of American Indians living in Florida.[1] During this excavation a construction crew unearthed numerous Indian artifacts and a burial site that included skeletal remains of persons of Indian ancestry. Shortly after this discovery, the City of Tampa agreed to transfer the artifacts and bodies to the Seminole Tribe of Florida, with the understanding that the Seminole Tribe would construct a museum in which the artifacts could be displayed and inter the bodies in the land on which the museum would be built.

The Seminole Tribe purchased an 8.5 acre parcel of land in Hillsborough County, Florida for these purposes, and petitioned the Secretary of the Interior to exercise his

authority pursuant to 25 U.S.C.A. § 465 and acquire title to the land in trust for the Indians. Although this statute designates that the decision to acquire land in trust for Indians is one within the Secretary's discretion, the Secretary has promulgated regulations that set forth policies and procedures governing the exercise of this discretion. 25 C.F.R. §§ 151.1–151.13. The Secretary, however, has retained the power to waive these regulations "in all cases where permitted by law and the Secretary finds that such waiver ... is in the best interest of the Indians." 25 C.F.R. § 1.2.

On January 16, 1981, the Department took title to the land in the name of the United States. Mindful of the cultural significance of the land's proposed use, the Secretary decided to waive consideration of the regulations that purport to guide the exercise of his discretion. The Secretary reasoned that this land acquisition was unique, because Congress has directed that preservation of the American Indians' religious and cultural heritage is a national objective. *See* 42 U.S.C.A. § 1996.

Shortly thereafter, the Tribe prepared an interment site for the remains, erected a museum for display of the artifacts, and built a center for exhibiting Indian art and craftware. In addition, the Tribe began operation of a "Smoke Shop" to sell cigarettes, tax free, to the general public. Dismayed by the Tribe's decision to sell cigarettes on this land, appellants commenced this lawsuit against the Department of the Interior and then-Secretary James Watt, alleging that 42 U.S.C.A. § 1996 did not authorize the Secretary to waive consideration of the Department's regulations when acquiring the land in trust. Upon the Seminole Tribe's motion, the district court allowed the Tribe to intervene as a party-defendant. The United States and the Tribe each filed a motion to dismiss, arguing that none of the appellants had standing to maintain this action, and that in any event the suit was prohibited by the United States' sovereign immunity. Appellants sought to amend their complaint, alleging

---

**1.** The facts as stated herein are taken from the allegations of the appellants' complaint.

that the Seminole Tribe was also conducting bingo games on the land and refusing to collect the state tax on taxable sales transactions occurring on the land. In addition, appellants contended that the Hillsborough County property tax rolls listed the property as exempt from taxation. Without ruling on the motion to amend, the district court dismissed the complaint with prejudice, holding that the plaintiffs lacked standing and that the court lacked jurisdiction because of sovereign immunity.

## II. SOVEREIGN IMMUNITY

### A. *Real Party in Interest*

■ The United States' sovereign immunity operates as a complete bar to lawsuits, even those filed by the states. *California v. Arizona*, 440 U.S. 59, 61–62, 99 S.Ct. 919, 921–922, 59 L.Ed.2d 144 (1979); *Minnesota v. United States*, 305 U.S. 382, 387, 59 S.Ct. 292, 294, 83 L.Ed. 235 (1939). As a threshold matter in any case in which sovereign immunity is invoked, we must first determine whether the suit is one against the United States as sovereign. *Panola Land Buyers Association v. Shuman*, 762 F.2d 1550 (11th Cir.1985). Designation of a government agency or officer as party-defendant does not avoid the sovereign immunity problem. *Alabama Rural Fire Insurance Co. v. Naylor*, 530 F.2d 1221, 1225–26 (5th Cir.1976). Rather, we must examine the issues presented and the effect of the judgment sought. If the relief sought requires payment of monies from the Federal Treasury, interferes with public administration, or compels or restrains the government, the action is deemed to be one against the United States as sovereign. *Stafford v. Briggs*, 444 U.S. 527, 542 n. 10, 100 S.Ct. 774, 784 n. 10, 63 L.Ed.2d 1 (1980); *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963); *Alabama Rural Fire Insurance Co.*, 530 F.2d at 1225 (5th Cir.1976).[2]

Appellants contend that they seek judicial review of agency action, a suit with which the federal courts are quite familiar. Yet, from what we can discern from the sparse record before us, the action specifically challenged, that is, the decision to acquire the land and hold it in trust, was one in which appellants acquiesced when it was made. Only after the Seminole Tribe began selling cigarettes and operating bingo games on the land did appellants register their protest. The relief sought further indicates that the gravamen of appellants' suit is the Seminole Tribe's conduct, not the Secretary's decision to acquire the land. Appellants seek to divest the United States of its title to the land, restoring all parties involved to the status quo ante. With the United States no longer holding title to the land, the state presumably could take steps to end the actions to which it objects. Clearly, this relief would operate against the sovereign. *See Hawaii v. Gordon*, 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963) (lawsuit seeking to order the United States to convey land to the state of Hawaii); *Minnesota v. United States*, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939) (condemnation proceeding against property in which the United States had interest).

■ Relying on *United States v. Lee*, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171 (1882), appellants argue that their lawsuit is not one against the United States as sovereign because their contention is that the Secretary exceeded his authority. We disagree. In *Lee*, the Court reviewed a claim that title to property held by the United States was obtained in an unconstitutional manner. If the claim were true, the Court observed, then the government officials exceeded their lawful power when acquiring the property in question. Such an assertion of governmental authority is not insulated from challenge in the courts, because when government officials exceed their authority their actions are not authorized by the sovereign. In such instances, a lawsuit can be maintained against the officials in their individual capacity, with-

---

**2.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

out sovereign immunity barring the way. 106 U.S. at 218–21, 1 S.Ct. at 258–62. Subsequent cases make clear that this exception from immunity applies only where the action is challenged as not one of the sovereign because it is alleged to be either unconstitutional or beyond the government agency's statutory authority. *Dugan v. Rank*, 372 U.S. 609, 621–22, 83 S.Ct. 999, 1006–07, 10 L.Ed.2d 15 (1963); *Malone v. Bowdoin*, 369 U.S. 643, 647, 82 S.Ct. 980, 983, 8 L.Ed.2d 168 (1962); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 701–02, 69 S.Ct. 1457, 1467–68, 93 L.Ed. 1628 (1949). Only where the official's conduct cannot be attributed to the sovereign because the official had no power to do the challenged acts can it properly be said that the action is not one against the United States as sovereign. *McClellan v. Kimball*, 623 F.2d 83, 85 (9th Cir.1980); *see also Gardner v. Harris*, 391 F.2d 885, 888 (5th Cir.1968) ("Merely because the Superintendent may have been acting wrongfully in interfering with plaintiff's access to the highway, either as a matter of violation of property rights under the deeds or as a tort under principles of general law, does not amount to circumstances fulfilling the exception that the officer must be acting beyond his statutory powers.").

■ In the present case, there can be no doubt that there was statutory authority for the Secretary's decision to take the land in trust. 25 U.S.C.A. § 465. Appellants do not challenge the constitutionality of the Secretary's acts, nor the constitutionality of the statute pursuant to which he acted. Nor do they suggest that the Secretary had no statutory authority for taking the land. Indeed, appellants fail to specify precisely what statutory limits on the Secretary's authority were exceeded. *See Larson*, 337 U.S. at 690, 69 S.Ct. at 1461; *Alabama Rural Fire Insurance Co.*, 530 F.2d at 1226. Their only complaint is that the Secretary abused his discretion by waiving consideration of the factors delineated in the regulations.

Appellants cite two regulations, 25 C.F.R. § 151.3, and 25 C.F.R. § 151.10, they claim were waived. They fail to demonstrate, or even allege, how 25 C.F.R. §. 151.3 [3] was "waived" in this instance. In fact, their own allegations belie this contention, as they admit that the Secretary has congressional authorization for the acquisition, and that the Seminole Tribe had an interest in the land before the United States acquired title.

■ Turning to the factors listed at 25 C.F.R. § 151.10,[4] we do not consider them

---

**3.** The regulation provides in part:

Land not held in trust or restricted status may only be acquired for an individual Indian or a tribe in trust status when such acquisition is authorized by an act of Congress. No acquisition of land in trust status, including a transfer of land already held in trust or restricted status, shall be valid unless the acquisition is approved by the Secretary.

(a) Subject to the provisions contained in the acts of Congress which authorize land acquisitions, land may be acquired for a tribe in trust status (1) when the property is located within the exterior boundaries of the tribe's reservation or adjacent thereto, or within a tribal consolidation area; or, (2) when the tribe already owns an interest in the land or, (3) when the Secretary determines that the acquisition of the land is necessary to facilitate tribal self-determination, economic development, or Indian housing.

25 C.F.R. § 151.3.

**4.** This regulation provides as follows:

In evaluating requests for the acquisition of land in trust status, the Secretary shall consider the following factors:

(a) The existence of statutory authority for the acquisition and any limitations contained in such authority;

(b) The need of the individual Indian or the tribe for additional land;

(c) The purposes for which the land will be used;

(d) If the land is to be acquired for an individual Indian, the amount of trust or restricted land already owned by or for that individual and the degree to which he needs assistance in handling his affairs;

(e) If the land to be acquired is in unrestricted fee status, the impact on the State and its political subdivisions resulting from the removal of the land from tax rolls;

(f) Jurisdictional problems and potential conflicts of land use which may arise; and

(g) If the land to be acquired is in fee status, whether the Bureau of Indian Affairs is equipped to discharge the additional responsi-

to be limits on the Secretary's authority to acquire land for the benefit of Indians. They do not purport to state for what Indian Tribe the Secretary may acquire land, or how much land may be acquired, or even the circumstances under which the Secretary may use this authority. Rather, they are more precisely labeled as factors to be considered in exercising discretion. As such, they do not constrain the Secretary's authority to acquire land in trust for Indians.[5] We conclude therefore that appellants have failed to demonstrate that the Secretary exceeded his authority.

### B. Waiver of Sovereign Immunity

Given that the United States is the real party in interest in this litigation, appellants must establish that the United States has waived its immunity with respect to this kind of lawsuit. Appellants point to the waiver of immunity contained in the Administrative Procedure Act (APA), 5 U.S.C.A. §§ 551–706. Section 702 waives federal sovereign immunity for suits against federal officers in which the plaintiff seeks nonmonetary relief.

■ The government responds that by waiving sovereign immunity under the APA, Congress did not mean to alter any existing limitations on the availability of specific relief. H.R.Rep. No. 1656, 94th Cong., 2d Sess., 12–13 (1976), *reprinted in* 1976 U.S.Code Cong. & Ad.News 6121,

6133. Indeed, the statute specifically provides that it is not to be read as "authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C.A. § 702. The government argues that the waiver of immunity contained within the Quiet Title Act of 1972 (QTA), 28 U.S.C.A. §§ 2409a, 1346(f), and 1402(d), impliedly forbids the relief sought here. In considering the respective positions, we are guided by the principle that waivers of sovereign immunity are to be strictly construed. *United States v. Sherwood*, 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941).

■ With the enactment of the Quiet Title Act, Congress waived the United States' immunity with respect to certain kinds of lawsuits, allowing the United States to be named as a defendant in lawsuits seeking the adjudication of disputed title to land.[6] By its terms the QTA excludes trust or restricted Indian lands from the scope of the waiver of immunity. 28 U.S.C.A. § 2409a. The rationale for this exclusion is explained briefly in the legislative history:

The Federal Government's trust responsibility for Indian lands is the result of solemn obligations entered into by the United States Government. The Federal Government has over the years made

---

bilities resulting from the acquisition of the land in trust status. 25 C.F.R. § 151.10.

5. Appellants also argue that the land in question is not trust land because the United States wrongfully failed to follow the proper procedures in acquiring the land. They cite no authority for their proposition, and indeed, to the extent that they ask us to assume the very fact about sovereign land they desire to prove, their assertion is contrary to the law of this circuit. *See Simons v. Vinson*, 394 F.2d 732, 736–37 (5th Cir.), *cert. denied*, 393 U.S. 968, 89 S.Ct. 398, 21 L.Ed.2d 379 (1968). As previously stated, appellants have made no showing that the Secretary exceeded his statutory authority, or that the authority is unconstitutional. Hence, we are unpersuaded that title to the land in question is not held by the United States for the benefit of the Seminole Tribe.

6. Prior to this 1972 statute, an adverse claimant could sue for money damages in the nature of just compensation under the Tucker Act, 28 U.S.C.A. § 1491, or seek relief under 28 U.S.C.A. § 1410, if the United States claimed a mortgage or other lien on the property. Congress' primary objection to waiving immunity in the past was concern over dispossessing the United States of property on which governmental operations were being performed. H.R.Rep. No. 92–1559, 92d Cong., 2d Sess., (1972), *reprinted in* 1972 U.S.Code Cong. & Ad.News 4547, 4554. Congress therefore provided that in suits brought under the QTA, if a final decision is adverse to the United States, the government may nevertheless choose to retain the land by electing to pay just compensation. 28 U.S.C.A. § 2409a(b).

specific commitments to the Indian people through written treaties and through informal and formal agreements. The Indians, for their part, have often surrendered claims to vast tracts of land. President Nixon has pledged the administration against abridging the historic relationship between the Federal Government and the Indians without the consent of the Indians.

H.R.Rep. No. 1559, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.Code Cong. & Ad.News 4547, 4556–57. Thus, no action may be brought to quiet title to lands that the United States holds in trust for an Indian tribe. *Carlson v. Tulalip Indian Tribes*, 510 F.2d 1337, 1339 (9th Cir.1975).

In *Block v. North Dakota ex rel. Bd. of Univ. & School Lands*, 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983), the Supreme Court applied the rule of statutory construction that a precisely drawn, detailed statute preempts more general remedies, in holding that the QTA is the exclusive means by which adverse claimants can challenge the United States' title to real property. 103 S.Ct. at 1819. To permit otherwise, the Court reasoned, would allow the QTA's carefully crafted limitations on the availability of relief to be circumvented, thereby rendering the Indian lands exception, among other things, null. 103 S.Ct. at 1818. The Court declined to consider the APA waiver of sovereign immunity as a supplemental remedy to the extent that the QTA would forbid the relief sought, invoking the exception to the APA waiver where another statute forbids the relief sought. 5 U.S.C.A. § 702; 103 S.Ct. at 1819 n. 22.

The government insists that *Block* governs the sovereign immunity question in this case. Appellants quite forcefully contend that this is not a suit to quiet title, because they do not seek to have title to the land quieted in them, nor do they seek recognition of any property interest in the land. Although technically the suit in the instant case is not one to quiet title, we conclude that Congress' decision to exempt Indian lands from the waiver of sovereign immunity impliedly forbids the relief sought here. By forbidding actions to quiet title when the land in question is reserved or trust Indian land, Congress sought to prohibit third parties from interfering with the responsibility of the United States to hold lands in trust for Indian tribes. Here, the appellants seek an order divesting the United States of its title to land held for the benefit of an Indian tribe. That appellants do not assert an adverse claim of title to the land, however, does not lessen the interference with the trust relationship a divestiture would cause.[7] Moreover, Congress chose to preclude an adverse claimant from divesting the United States' title to Indian lands held in trust.[8] It would be anomalous to allow others, whose interest might be less than that of an adverse claimant, to divest the

---

7. To be sure, the relief sought here would not prohibit the United States from reacquiring the land in question. Whether the United States would do so is not a matter for our speculation. In any event, Congress chose to exempt trust or restricted Indian lands from the limited provisions of the QTA, which affords the government the option of giving up the land to an adverse claimant who successfully disputes the government's interest, or paying just compensation. 28 U.S.C.A. § 2409a(b). We believe this exhibits Congress' aversion to having third parties interfere with the United States' trust relationship with Indian lands.

8. Numerous cases have been brought to determine whether the United States has terminated its trust relationship over Indian lands. In each instance, the court recognized that the power to terminate the trust relationship belonged to Congress, observing that Congress' intention to do so must be plain and unambiguous to be effective. *See, e.g., DeCoteau v. District County Court for Tenth Judicial District*, 420 U.S. 425, 444, 95 S.Ct. 1082, 1092, 43 L.Ed.2d 300 (1975); *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 667–70, 94 S.Ct. 772, 777–79, 39 L.Ed.2d 73 (1974); *United States v. Santa Fe Pacific R.R.*, 314 U.S. 339, 345–47, 62 S.Ct. 248, 251–52, 86 L.Ed. 260 (1941); *Johnson v. M'Intosh*, 8 Wheat. 543, 586, 5 L.Ed. 681 (1823); *Catawba Indian Tribe v. South Carolina*, 718 F.2d 1291, 1296–99 (4th Cir.1983), *adopted after reh'g. en banc*, 740 F.2d 305 (4th Cir.1984). Hence, we are loathe to allow suits seeking the relief requested here, without some indication of congressional approval.

sovereign of title to Indian trust lands.[9] Hence we conclude that the APA waiver of immunity is inapplicable in this instance.

 Our conclusion that Congress did not intend to permit third parties to disrupt the trust relationship of the United States to land held for the Indians is bolstered by considering that the congressional waiver of immunity under the APA does not "[affect] other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground." 5 U.S.C.A. § 702. Thus, agency action is still unreviewable to the extent that it "is committed to agency discretion by law." 5 U.S.C.A. § 701(a)(2). This exception to judicial review is a narrow one that must be clearly demonstrated before it can be invoked. *Greenwood Utilities Commission v. Hodel*, 764 F.2d 1459, 1464 (11th Cir.1985). In *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the Supreme Court announced that judicial review of agency action is forbidden by this provision only "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" 401 U.S. at 410, 91 S.Ct. at 820 (quoting S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945)); *see also Heckler v. Chaney*, ─── U.S. ───, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985).

 The extent to which a particular statute confers uninhibited discretion upon an administrator is dependent upon whether a statute provides standards against which the challenged action can be measured. *American Federation of Government Employees v. Brown*, 680 F.2d 722, 726 (11th Cir.1982), *cert. denied*, 459 U.S. 1104, 103 S.Ct. 728, 74 L.Ed.2d 952 (1983). If there are no judicially manageable standards available for judging how and when an agency should exercise its discretion, then it is impossible to determine even whether the agency abused its discretion. *Heckler*, 105 S.Ct. at 1655; *Greenwood Utilities Commission*, 764 F.2d at 1464.

 The statute pursuant to which the Secretary acted in acquiring the land in trust provides in pertinent part:

The Secretary of the Interior is hereby authorized, in his discretion, to acquire, through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to land, within or without existing reservations, including trust or otherwise restricted allotments, whether the allottee be living or deceased, for the purpose of providing land for Indians.

For the acquisition of such lands ... there is authorized to be appropriated, a sum not to exceed $2,000,000 in any one fiscal year: *Provided*, That no part of such funds shall be used to acquire additional land outside the exterior boundaries of Navajo Indian Reservation for the Navajo Indians in Arizona, nor in New Mexico, in the event that legislation to define the exterior boundaries of the Navajo Indian Reservation in New Mexico, and for other purposes, or similar legislation, becomes law.

. . . . .

Title to any lands or rights acquired pursuant to [this section] shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired....

25 U.S.C.A. § 465. This statute was enacted as part of the Indian Reorganization Act of 1934, 48 Stat. 984, codified as amended at 25 U.S.C.A. § 461 et seq., the purpose of which was to "rehabilitate the Indian's economic life and to give him a chance to develop the initiative destroyed by a centu-

---

**9.** We recognize that a similar argument was rejected by the court in *City of Sault Ste. Marie v. Andrus*, 458 F.Supp. 465, 471–72 (D.D.C.1978). Several of the claims raised in that case involved allegations that the Secretary acted unconstitutionally or beyond his statutory authority when the United States acquired title to the land. *See City of Sault Ste. Marie v. Andrus*, 532 F.Supp. 157, 160 (D.D.C.1980). To that extent the case is distinguishable, because the Secretary's actions could not be considered to be sovereign acts, thereby precluding the immunity defense.

ry of oppression and paternalism." *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 152, 93 S.Ct. 1267, 1272, 36 L.Ed.2d 114 (1973) (quoting H.R.Rep. No. 1804, 73d Cong., 2d Sess., 6 (1934)). Through this statute, Congress sought to foster and encourage self-government among the various Indian tribes. *Fisher v. District Court of Sixteenth Judicial District of Montana,* 424 U.S. 382, 387, 96 S.Ct. 943, 946, 47 L.Ed.2d 106 (1976). The grant of authority to the Secretary of the Interior to acquire land for the Indians was central to this purpose. Previously, the Federal Government had a policy of allotting plots of land to individual Indians. *See* General Allotment Act of 1887, 24 Stat. 388, codified at, 25 U.S.C.A. § 331 et seq. Having failed to meet the land needs of individual Indians and Indian tribes through this policy, because many of the allotted lands were sold to whites, *see* S.Rep. No. 1080, 73d Cong., 2d Sess., 1–2 (1934), Congress directed that Indian land no longer be allotted, 25 U.S.C.A. § 461, and that alienation of restricted Indian land be prohibited except in certain instances. 25 U.S.C.A. § 464. In addition, Congress extended the existing periods of trust and restrictions on alienation for indefinite periods. 25 U.S.C.A. § 462. To ensure that individual Indians and Indian tribes had land adequate for their self-support, Congress further authorized the acquisition of additional lands for Indians, and provided that land so acquired would be held in trust by the Federal Government. 25 U.S.C.A. § 465.

■ The statute states that the decision to acquire land is one within the Secretary's discretion. Furthermore, it does not delineate the circumstances under which exercise of this discretion is appropriate, except to prohibit additional acquisitions outside the exterior boundaries of certain reservations. Indeed, the decision to acquire a particular tract of land would involve a myriad of factors, including internal management constraints relating to budget limits, the particular needs of the numerous individual Indians and Indian tribes, the proposed use of the land, and government resources for overseeing the land. In addition, cooperation of state and local authorities would in many cases be essential. It is of necessity then that the Secretary have broad discretion when reviewing an application for land acquisition.[10]

Appellants contend that law to apply might be found in the regulations set forth at 25 C.F.R. § 151.3, and 25 C.F.R. § 151.-10. Appellants fail to demonstrate, or even allege, how 25 C.F.R. § 151.3 provides law to apply in this case. They admit that the Secretary had congressional authority to acquire the land. In addition, they admit that the Tribe had an interest in the land before the United States acquired title. And they do not allege that the Secretary failed to approve the land acquisition.

■ 25 C.F.R. § 151.10 sets forth factors to be considered when the Secretary is acting on a request for acquisition of land in trust status. We believe that the factors, although they are guides for the exercise of the Secretary's discretion, are not "law" that a reviewing court can apply. The regulation does not purport to state how the agency should balance these factors in a particular case, or what weight to assign to each factor. Nor does it man-

---

10. In their complaint appellants alleged that the land's trust status deprived them of their ability to collect the tax imposed on cigarette sales. The parties quarrel over whether Florida law forbids the taxing of all cigarette sales made by Indians, or just those made on reservation or trust land. Whether and to what extent Florida law prohibits collection of this tax is an issue we need not address. We note only that, as a matter of federal law, Florida is not prohibited from imposing a tax on cigarette sales made to non-Indians, even those occurring on land held in trust by the United States. *Washington v.*

*Confederated Tribes of the Colville Indian Reservation,* 447 U.S. 134, 151, 155–57, 100 S.Ct. 2069, 2082–83, 65 L.Ed.2d 10 (1980); *Moe v. Confederated Salish & Kootenai Tribes,* 425 U.S. 463, 482–83, 96 S.Ct. 1634, 1645–46, 48 L.Ed.2d 96 (1976); *Seminole Tribe of Florida v. Butterworth,* 658 F.2d 310, 317 n. 9 (5th Cir.1981), *cert. denied,* 455 U.S. 1020, 102 S.Ct. 1717, 72 L.Ed.2d 138 (1982). Of course, Hillsborough County is forbidden to tax the land under 25 U.S.C.A. § 465. The county, however, is not a party to this proceeding.

date that the Secretary not acquire lands located in particular areas, or limit the size of acquisitions. The factors listed in the regulation are not the kind of legal principles courts are familiar with applying to a particular case.

■ Our characterization of these regulations is supported by the Supreme Court's decision in *Panama Canal Co. v. Grace Line,* 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958). The petitioner in that case asked the Court to review the amount charged in tolls to ships passing through the Panama Canal. Although the statute prescribing the amount to be charged described in some detail the formula to be applied in fixing the toll, the Court concluded that the decision was one Congress had left to the agency's discretion. 356 U.S. at 317–18, 78 S.Ct. at 757–58. The Court observed that the matter was one "on which experts may disagree," involving "nice issues of judgment and choice ... which require the exercise of informed discretion." 356 U.S. at 317, 78 S.Ct. at 757 (citations omitted); *see also Strickland v. Morton,* 519 F.2d 467 (9th Cir.1975) (Secretary of the Interior's decision that public land was "suitable for disposal" was unreviewable as within the Secretary's discretion despite statute's listing ten "reasons" to guide the decision). Thus, we conclude that in this case the Secretary's decision to acquire the land is unreviewable as within his discretion.

### III.

■ Because this lawsuit is barred by the United States' sovereign immunity, we need not address the standing question. *Block v. Community Nutrition Institute,* — U.S. ——, 104 S.Ct. 2450, 2458 n. 4, 81 L.Ed.2d 270 (1984). The decision of the court below is AFFIRMED.[11]

11. Even when a decision is committed to agency discretion, a court may consider allegations that an agency failed to follow its own binding regulations. *See Local 2855, AFGE (AFL–CIO) v. United States,* 602 F.2d 574, 580 (3d Cir.1979). As we stated previously, however, the Secretary did not violate any provision of 25 C.F.R. § 151.3. With respect to 25 C.F.R. § 151.10,

given the discretionary balancing to be performed by the Secretary, appellants' real allegation is that the Secretary failed to give what they might consider to be the appropriate weight to particular factors. That, however, would not be grounds for overturning the decision. *See Strickland v. Morton,* 519 F.2d 467, 471 (9th Cir.1975).