

# THE ATTORNEY GENERAL
# OF TEXAS

April 12, 1989

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable Bob Bullock
Comptroller of Public Accounts
L.B.J. State Office Building
Austin, Texas  78774

Opinion No.  JM-1040

Re:  Whether an Indian tribe is subject to the Texas Bingo Enabling Act, article 179d, V.T.C.S., and related questions (RQ-1577)

Dear Mr. Bullock:

You ask a number of questions about state regulation of bingo on Indian lands in light of a 1988 federal enactment, the Indian Gaming Regulatory Act.  Pub. Law No. 100-497, 102 Stat. 2467, 25 U.S.C. §§ 2701-2721.  The act regulates "gaming," including bingo, on Indian lands.

The federal statute divides gaming into three classes, and bingo is categorized as class II gaming.  25 U.S.C. § 2703(6)-(8).  Class II gaming on Indian lands is under the jurisdiction of the tribes, but subject to the provisions of the Indian Gaming Regulatory Commission.  25 U.S.C. § 2710(a)(2).  States have no authority to regulate bingo on Indian lands.  Id.; see also S. Rep. (Indian Affairs Committee) No. 446, 100th Cong., 2d Sess. (1988) (accompanying bill S. 555, which became Indian Gaming Regulatory Act).  The only situation in which a state may play a role in the regulation of gaming on Indian lands is where a tribe and a state enter into a compact regarding the conduct of class III gaming on Indian lands.  25 U.S.C. § 2710(d).  See generally 25 U.S.C. § 2703(8) (defining class III gaming).  Therefore, your office may not regulate bingo on Indian lands in Texas.

Your first question is whether certain land deeded to the United States Department of the Interior for the benefit of the Texas Band of Kickapoo Indians is in fact Indian

land.   The  Indian  Gaming Regulatory  Act  defines   "Indian lands" as follows:

> (4) The term `Indian lands' means--
>
> (A) all lands within the limits of any Indian reservation; and
>
> (B) any  lands title  to which  is  either held in trust  by the United  States for  the benefit of any Indian tribe or individual  or held by  any  Indian  tribe  or   individual subject to restriction  by the United  States against alienation and  over which an  Indian tribe exercises governmental power.

25 U.S.C. § 2703(4).   The 1983 legislation by which Congress recognized the Texas Band of Kickapoo Indians as a  subgroup of the  Kickapoo Tribe  of Oklahoma  contains the  following provisions governing acquisition of land for the benefit  of the Texas Band of Kickapoo Indians:

> (a) Sections [461-479]  of this title  are hereby   made   applicable   to   the   Band: Provided, however, That the Secretary is only authorized to  exercise his  authority  under section 465  of this  title with  respect  to lands located in Maverick County, Texas.
>
> (b)  The  Secretary   is  authorized   and directed to accept no  more than one  hundred acres of land in Maverick County, Texas which shall be offered for the benefit of the  Band with the approval of  the Tribe.  Nothing  in this  subsection   shall  be   construed   as limiting the authority of the Secretary under section 465 of this title.

25  U.S.C.  §  1300b-14.   See generally  25  U.S.C.   §  465 (general authorization  for the  Department of  Interior  to acquire land to be held in trust for Indians).  You tell  us that the  Secretary of  the Interior  actually accepted  125 acres of land in trust for the benefit of the Texas Band  of Kickapoo Indians.  Such  a transaction  may well  contravene the statute set  out above.  Neither this  office nor  your office, however,  has authority  to make  an  administrative determination as to  whether or  not a  particular piece  of land is in  fact Indian  land.  Such  a determination  would have to be made,  in the first  instance, by the Department of the Interior.  A challenge to the department's acceptance of

a particular piece of land to be held in trust for certain Indians would have to be made in the courts. <u>See, e.g., State of Florida Dep't of Business Regulation v. United States Dep't of Interior</u>, 768 F.2d 1248 (11th Cir. 1985), <u>cert. denied</u>, 475 U.S. 1011 (1986) (challenge by various state agencies to Secretary of Interior's acceptance of tract of land to be held in trust for benefit of Seminole Indian Tribe of Florida). In the absence of a judicial determination about the land in question, we advise you that the determination of the Department of the Interior as to what land is Indian land should be observed.

You also ask:

> Assuming that the Tribe enters into an agreement whereby another entity agrees to manage and operate the conduct of bingo on the Tribe's trust land, must such an agreement meet all requirements of Section 12 of IGRA [25 U.S.C. § 2711]?

An Indian tribe may enter into a management contract for the operation and management of a class II gaming activity. 25 U.S.C. § 2511. Such a contract is subject to the approval of the chairman of the National Indian Gaming Commission. <u>Id.</u> It is the responsibility of the chairman of the National Indian Gaming Commission to determine that the contract meets the requirements of the federal statute. Your office has no responsibility for or authority to approve, disapprove, or oversee such contracts.

You next ask:

> Under the terms of a management contract entered into between the Tribe and a management contractor, the contractor would assume responsibility for managing and operating the bingo games conducted on the Tribe's trust lands. In light of the fact that the Tribe is, in such circumstances, no longer the entity operating the bingo games, my third question is whether bingo games conducted by the management contractor acting pursuant to such a contract are subject to the Texas Bingo Enabling Act?

Again, under the Indian Gaming Regulatory Act, a state has no authority to regulate class II gaming on Indian lands, regardless of whether the games are conducted by the

tribe or by another entity pursuant to a management contract.

You next ask:

> In the event the Tribe elects to license another entity to own a bingo activity to be conducted on the Tribe's trust lands within the Tribe's jurisdiction, would the proposed licensee be required to be an organization eligible for a license to conduct bingo under the Texas Bingo Enabling Act? Would the bingo occasions conducted pursuant to the tribal license be subject to the Texas Bingo Enabling Act?

The Indian Gaming Regulatory Act contains the following provision:

> A tribal ordinance or resolution may provide for the licensing or regulation of class II gaming activities owned by any person or entity other than the Indian tribe and conducted on Indian lands, only if the tribal licensing requirements . . . are at least as restrictive as those established by State law governing similar gaming within the jurisdiction of the State within which such Indian lands are located. No person or entity, other than the Indian tribe, shall be eligible to receive a tribal license to own a class II gaming activity conducted on Indian lands within the jurisdiction of the Indian tribe if such person or entity would not be eligible to receive a State license to conduct the same activity within the jurisdiction of the State.

25 U.S.C. § 2710(b)(4)(A). In other words, the Indian Gaming Regulatory Act incorporates state-law standards to govern the conduct of bingo by persons and entities other than an Indian tribe. Your office, however, has no authority to enforce those provisions.

You next ask:

> In the event the Tribe may conduct bingo not subject to regulation under the Bingo Act, may manufacturers and distributors licensed to sell bingo cards, supplies,

> devices, or equipment for use in Texas legally sell such items to the Tribe?

Section 13a(a) of the Texas Bingo Enabling Act, article 179d, V.T.C.S., provides in part:

> A manufacturer may not sell or supply to a person within this state or for use within this state bingo cards, boards, sheets, pads, or other supplies, devices, or equipment designed to be used in playing bingo or engage in any intrastate activities involving those items without holding a license from the comptroller of public accounts.

Although the question is one of federal law, it is our opinion that regulation of the sale of bingo equipment on Indian land is part of the regulation of bingo. Because the state has no authority to regulate bingo on Indian land, the Texas Bingo Enabling Act is inapplicable to a sale of bingo equipment that takes place on Indian land.

Your question also raises the issue of whether a sale to a tribe that occurs off of Indian land is subject to the act. Attempts by the federal government to control activities of Indians off Indian lands have been upheld. See, e.g., United States v. 43 Gallons of Whiskey, 93 U.S. 188 (1876) (holding that Congress may constitutionally forbid the sale of liquor in an area adjoining an Indian reservation in order that Indians will not be tempted by alcohol); see also Johnson v. Gearlds, 234 U.S. 422, 436-39 (1914). However, "preemption of state laws outside of Indian country has not been extensive." F. Cohen, Handbook of Federal Indian Law, ch. 6, § C1 (1982 ed.). The Indian Gaming Regulatory Act does not expressly preempt the application of state bingo regulations to Indians who are engaging in transactions relating to bingo off of Indian land. Rather, the act repeatedly refers to gaming on Indian lands. Therefore, we conclude that a sale of bingo equipment to an Indian tribe that occurs off of Indian land is not exempt from state regulation. See Mescalero Apache Tribe v. Jones, N.M., 411 U.S. 145 (1973) (stating that absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to state laws applicable to all citizens of state). We caution, however, that the question is one of federal law.

Your final question is in three parts:

> First, in the event the Tribe may conduct bingo not subject to regulation under the Bingo Act, may the Tribe legally advertise or promote its bingo games?

> Secondly, in the event the Tribe enters into a management contract such as is described in Section 12 of IGRA, may the management contractor advertise or promote the Tribe's bingo games?

> Thirdly, if the answer to part 2 of this question is yes, and assuming that the management contractor in question also holds a Texas commercial lessor's license, may that contractor/lessor advertise or promote the Tribe's bingo games at the lessor's commercial hall(s) in Texas or any other location in Texas?

Section 11(p) of the Texas Bingo Enabling Act, article 179d, provides:

> No one other than a licensed authorized organization may advertise or promote bingo. A licensed authorized organization may not include in an advertisement or promotion the amount of a prize or series of prizes offered at a bingo occasion.

Section 11(g) provides:

> A person other than a bona fide member of a licensed authorized organization may not conduct, promote, administer, or assist in conducting, promoting, or administering, a bingo game.

See also V.T.C.S. art. 179d, § 19. Again, because the state cannot regulate bingo on Indian lands, these provisions do not apply to advertisements or promotions on Indian land. As indicated, however, although it would doubtless be within the authority of Congress to preempt application of those provisions to advertisement or promotion conducted pursuant to the Indian Gaming Regulatory Act, it is our opinion that Congress has not done so. Section 11(p) permits only "licensed authorized organizations" to advertise or promote bingo in Texas. Since the Bingo Enabling Act defines "licensee" as a person licensed under the Bingo Enabling Act, V.T.C.S. art. 179d, § 2(17), we must read "licensed

authorized organization" to refer only to organizations licensed under the Texas statute. Therefore, the plain terms of section 11(p) would prohibit the advertisement or promotion off of Indian land of bingo conducted on Indian land. Again, however, we caution that the issue of preemption is one of federal law. Furthermore, although you have not asked about the constitutionality of applying the statute to bingo conducted pursuant to the Indian Gaming Regulatory Act, we note that a prohibition on the advertisement of a legal activity raises questions under the First Amendment to the United States Constitution. See generally Central Hudson Gas and Elec. Corp. v. Public Serv. Comm'n of New York, 447 U.S. 557 (1980) (holding that a New York Public Service Commission order banning electric utilities from advertising violates the First and Fourteenth Amendments); Posadas de Puerto Rico Ass'n v. Tourism Co. of Puerto Rico, 478 U.S. 328 (1986) (holding that Puerto Rico's restrictions on the advertising of legal gambling activities are facially constitutional).

Also, we note in response to the third part of your question that a person who holds a commercial lessor's license has no authority to promote or advertise bingo, even if the bingo is conducted under the Texas statute. Article 179d allows only "licensed authorized organizations" to advertise or promote bingo. The act defines "authorized organization" as follows:

> 'Authorized organization' means a religious society, a nonprofit organization (other than an organization whose membership is predominantly veterans or their dependents organized to advance the interests of veterans, active duty personnel, or their dependents) whose predominant activities are for the support of medical research or treatment programs, a fraternal or veterans organization, or a volunteer fire department.

V.T.C.S. art. 179d, § 2(11). Only "authorized organizations" may receive a license to conduct bingo under the Texas statute, and the act uses the term "authorized organization" only to refer to entities authorized to conduct bingo. A licensed authorized organization may use the premises of an authorized commercial lessor to conduct bingo. However, there is no requirement that a licensed commercial lessor be an "authorized organization," and a licensed commercial lessor is not itself authorized to conduct bingo. Therefore, section 11(p) would not permit a licensed commercial lessor to advertise or promote bingo.

## S U M M A R Y

The state has no authority to regulate bingo in Indian lands. This office cannot make a factual determination as to what land is in fact Indian land. The state has no authority to approve, disapprove, or oversee management contracts for the operation of bingo on Indian lands.

Although the question is one of federal law, it is our opinion that Congress has not preempted the state from applying state provisions regulating bingo to Indian bingo activities that take place off of Indian land.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General