SOUTHEASTERN PEANUT
ASSN., Plaintiff,

v.

Richard E. LYNG, et al., Defendants.

Civ. No. 87–217–ALB/AMER(DF).

United States District Court,
M.D. Georgia,
Albany/Americus Division.

April 5, 1990.

Evans J. Plowden, Jr., Albany, Ga., for plaintiff.

Michael C. Daniel, Asst. U.S. Atty., Macon, Ga., for defendants.

FITZPATRICK, District Judge.

Plaintiff Southeastern Peanut Association filed its Complaint in this action on December 14, 1987, alleging that the shrinkage allowance for export peanuts set by Defendant Lyng, Secretary of the United States Department of Agriculture, was "arbitrary, capricious, an abuse of discretion, and not in conformance with 7 U.S.C. § 1359." Complaint, ¶ 46. Plaintiff's Prayer for Relief requests this court to set aside the action of the Department and mandate that Defendants establish a shrinkage allowance of not less than 4.25% on export peanuts. Before the court is the Motion of Defendants to Dismiss the Complaint for Lack of Subject Matter Jurisdiction filed pursuant to Rule 12 of the Federal Rules of Civil Procedure. The ruling of the court on Defendants' Motion is set forth below.

## BACKGROUND

When considering a motion to dismiss, a district court must accept as true the allegations of a plaintiff's complaint. *Eaton v. Dorchester Dev. Inc.*, 692 F.2d 727, 731 (11th Cir.1982). In the present action, Plaintiff is a trade association of commercial peanut shellers or handlers in Georgia, Florida, and Alabama. Defendant Richard E. Lyng is Secretary of the United States Department of Agriculture, and Defendant Milton Hertz is Executive Vice President of Defendant Commodity Credit Corporation. Plaintiff seeks a declaratory judgment, 28 U.S.C. §§ 2201 and 2202, and a writ of mandamus, 28 U.S.C. § 1361, arising under the Food Security Act of 1985, at 7 U.S.C. § 1359.

Since 1977 the growing, handling, and sale of peanuts in the United States has been regulated through a system of poundage quotas allocated to farms with acreage allotments. Complaint ¶ 7. With this system came the categorization of peanuts into two basic groups: "quota" and "additional" peanuts. Complaint ¶ 8. Quota peanuts may be used in the United States while additional peanuts must be either exported or crushed into peanut oil and meal residue. Complaint ¶ 9. The Secretary of the Department of Agriculture makes price support available to growers for quota and additional peanuts at different rates. Complaint ¶ 11.

A peanut handler is "[a]ny person or firm, or subdivision thereof, registered with ASCS [Agricultural Stabilization and Conservation Service] for the purpose of acquiring peanuts for resale, domestic consumption, processing, exportation, or crushing through a business of buying and selling peanuts or peanut products...." 7 C.F.R. § 1446.72(r). Plaintiff's members are subject to the provisions of and the regulations issued pursuant to the Food Security Act of 1985.

Most handlers purchase both quota and additional peanuts. Upon receipt, handlers co-mingle the peanuts in warehouses, notwithstanding their categorization prior to purchase. The subsequent removal of the co-mingled peanuts from the warehouse is called "bail-out." Complaint ¶¶ 19–20. Before 1985, the handling of contract additional peanuts [1] during bail-out was overseen through a system of "physical supervision." Complaint ¶ 22. The Food Securi-

---

**1.** Handlers can purchase additional peanuts directly from the growers by entering into a contract for their purchase and sale prior to August 1 of the year in which the peanuts are to be harvested. These peanuts are known as "contract additionals." Complaint ¶ 18.

ty Act of 1985 established an alternative system of "non-physical supervision." This new system provided for the dividing of peanuts into three categories at the time of purchase: (1) sound split kernel peanuts; (2) sound mature kernel peanuts; and, (3) other kernels. The non-physical supervision system is set forth in 7 U.S.C. § 1359(p).

(2)(A) Supervision of the handling and disposal of additional peanuts by a handler shall not be required under paragraph (1) if the handler agrees in writing, prior to any handling or disposal of such peanuts, to comply with regulations that the Secretary *shall* issue.

(B) The regulations issued by the Secretary under subparagraph (A) *shall* include, but need not be limited to, the following provisions:

(i) Handlers of shelled or milled peanuts may export peanuts classified by type in all of the following quantities (*less such reasonable allowance for shrinkage as the Secretary may prescribe*):

(I) Sound split kernel peanuts in an amount equal to twice the poundage of such peanuts purchased by the handler as additional peanuts.

(II) Sound mature kernel peanuts in an amount equal to the poundage of such peanuts purchased by the handler as additional peanuts less the amount of sound split kernel peanuts purchased by the handler as additional peanuts.

(III) The remaining quantity of total kernel content of peanuts purchased by the handler as additional peanuts and not crushed domestically.

(ii) Handlers shall ensure that any additional peanuts exported are evidenced by onboard bills of lading, other appropriate documentation as may be required by the Secretary, or both.

(iii) If a handler suffers a loss of peanuts as a result of fire, flood, or any other condition beyond the control of the handler, the portion of such loss allocated to contracted additional peanuts shall not be greater than the por-

tion of the handler's total peanut purchases for the year attributable to contracted additional peanuts purchased for export by the handler during such year.

7 U.S.C. § 1359(p)(2) (emphasis added). The emphasized portions of the above-quoted subsection of § 1359 are the focal point of the present controversy. The parenthetically-noted "allowance for shrinkage" in subsection (p)(2)(B)(i) refers to a price support system which takes into account the deterioration of kernel content and peanut value over time. On June 17, 1986, the Secretary published interim regulations at 7 C.F.R. § 1446 which allowed no shrinkage percentage to handlers who opted for non-physical supervision. The final rule, published on December 12, 1986, provided a one-half of one percent (0.005) shrinkage allowance for those handlers.

The goal of Plaintiff's Complaint is to have the court set aside Defendants' actions and mandate that Defendants grant a shrinkage allowance of at least 4.25 percent. Defendants' Motion sets forth three arguments that dismissal for lack of subject matter jurisdiction is appropriate in the present action: (1) the matter is not reviewable because of the discretionary nature of the statutory provision at issue; (2) Plaintiff lacks standing to assert this action; and, (3) injunctive relief is barred by 15 U.S.C. § 714b(c). The court need only discuss Defendants' first argument because the principles regarding agency discretion and mandamus take this matter beyond the court's scope of review.

## DISCUSSION

Plaintiff seeks declaratory relief, 28 U.S.C. §§ 2201 and 2202, and a writ of mandamus, 28 U.S.C. § 1361. Defendants' first argument regarding the non-reviewability of this matter is really two arguments in one. Defendants argue that their actions are beyond judicial review pursuant to the provisions of 5 U.S.C. § 701(a)(2). Defendants next argue that mandamus is inappropriate because Plaintiff has no right to the relief sought, a necessary prerequisite for the issue of a writ. Defendants'

positions are supported by binding case law.

## I. *Agency Discretion*

Examination of the first issue before the court regarding agency discretion must "begin with the strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 669, 106 S.Ct. 2133, 2135, 90 L.Ed.2d 623 (1986). As Chief Justice Marshal stated in the landmark case of *Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137, 2 L.Ed 60 (1803), "[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws." *Id.* at 163, 5 U.S. at 163. This presumption, however, like any other presumption, may be overcome. One way to overcome this presumption is by a finding of Congressional intent, either through specific statutory language, legislative or statutory scheme, or legislative history. *Block v. Community Nutrition Institute*, 467 U.S. 340, 349, 351, 104 S.Ct. 2450, 2456, 2457, 81 L.Ed.2d 270 (1984).

In the Administrative Procedure Act, 5 U.S.C. §§ 551–559, 701–706, Congress provided for judicial review of agency action.

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof....

5 U.S.C. § 702. This right to judicial review is limited, however, by very narrow exceptions set forth in section 701.

(a) This chapter applies, according to the provisions thereof, except to the extent that—

(1) statutes preclude judicial review; or

(2) agency action is committed to agency discretion by law.

5 U.S.C. § 701(a). Defendants seek refuge in the agency discretion exception of Subsection (2).

Judicial decisions have established two categories of statutes which fall within the narrow agency discretion exception. First are cases where the statute is so broadly drawn that it does not provide judicially manageable standards for a court to apply in measuring the agency's action. *See State of Florida, Dep't of Business Regulation v. United States Dep't of the Interior*, 768 F.2d 1248, 1255 (11th Cir.1985), *cert. denied*, 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986); and, *Greenwood Util. Comm'n. v. Hodel*, 764 F.2d 1459, 1464 (11th Cir.1985). The second category includes those statutes which involve questions of both judgment and choice, i.e. "the exercise of informed discretion." *State of Florida*, 768 F.2d at 1257 (citing *Panama Canal Co. v. Grace Line*, 356 U.S. 309, 317, 78 S.Ct. 752, 757, 2 L.Ed.2d 788 (1958)). The statutory language involved in the present action falls within both categories of the agency discretion exception.

■ Unless Congress has statutorily provided some standard by which the court is to measure an agency's actions, review is impossible and the court is without jurisdiction. *Hodel*, 764 F.2d at 1464. In other words the statute must provide judicially manageable standards to be applied. The particular statute at issue in *Hodel* was section 5 of the Flood Control Act of 1944, 16 U.S.C. § 825s, which provided for the transmittal and disposal of power under the control of the Secretary of Energy "in such manner as to encourage the most widespread use thereof" and also that "[p]reference in the sale of such power and energy shall be given to public bodies and corporations." 16 U.S.C. § 825s. The only congressional directive given in section 5 is the phrase "most widespread use," which the Eleventh Circuit found inadequate as a legal standard to apply to the Secretary's decision. "Most widespread use" is no different than the "reasonable" language of the statutory provision applicable in this case (less such *reasonable* allowance for shrinkage as the Secretary *may* prescribe).[2]

---

**2.** Title 7 U.S.C.A. § 1359(p)(2)(B) was amended August 14, 1989, to strike the language "less such reasonable allowance for shrinkage as the

Secretary may prescribe," however, defendants' actions that form the basis of plaintiff's com-

■ The statutory standard must, of necessity, guide a court in judging when and how an agency's discretion should be exercised. *State of Florida*, 768 F.2d at 1255. The provision in section 1359 giving the Secretary discretionary authority to set a reasonable shrinkage allowance does not furnish this court with any law to apply. The very use of the word "may" further indicates the discretionary nature of the Secretary's actions. The statutory provision provides the court with no guidelines by which to judge the agency's actions.

The informed discretion category of the agency discretion exception concerns situations where even experts could disagree. *State of Florida*, at 1257; *Panama Canal Co.*, 356 U.S. at 317, 78 S.Ct. at 757. The statute with which the Supreme Court was concerned in the *Panama Canal Co.* case prescribed detailed guidelines to be followed. The Court, however, found that despite the detailed statutory scheme, the agency had to confront issues of informed judgment and choice regarding matters on which experts might disagree. 356 U.S. at 317, 78 S.Ct. at 757. The shrinkage allowance decision in the present case concerns the very same type of informed choices. That experts might disagree on the shrinkage allowance is evidenced by this lawsuit. The Secretary's decision must be based upon a number of variables which the Secretary is in the best position to analyze and evaluate. Congress apparently intended for the Secretary, in his discretion, to set reasonable shrinkage allowance when necessary, based upon all relevant, available data. The otherwise detailed and mandatory statutory scheme of the remainder of section 1359 convinces this court of Congress' intent to commit the setting of a shrinkage allowance to agency discretion.

Plaintiff argues that congressional intent for judicial review can be found at 7 U.S.C. § 1359(s)(4)(B) which provides that:

Nothing in this section shall be construed as prohibiting any court of competent jurisdiction from reviewing any determination made by the Secretary with respect to whether such determination was made in conformity with the applicable law and regulations.

7 U.S.C. § 1359(s)(4)(B). This statutory language, however, recognizes the very principles of the agency discretion exception. Without Congressional guidance on the law or regulations to be applied, then the court is without jurisdiction in these matters. This statutory language is in complete accord with the standards of the agency discretion exception and with this court's decision.

The statutory scheme and the specific language of subsection 1359(p)(2) convince the court that Congress intended for the establishment of a reasonable shrinkage allowance to be committed to agency discretion. In fact, the particular provision involved here falls within both categories of the agency discretion exception of the Administrative Procedure Act, 5 U.S.C. § 702(a)(2), as shown above. Accordingly, the court finds that Defendant's Motion should be GRANTED and Plaintiff's action DISMISSED. However, even if the Secretary's actions do not fall within the agency discretion exception, the court finds, alternatively, that the principles regarding issuance of a mandamus prohibit the issuance of a writ.

## II. *Mandamus*

■ The mandamus statute provides that

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

28 U.S.C. § 1361. Mandamus is an extraordinary remedy, *District Lodge No. 166, International Assoc. of Machinists and Aerospace Workers*, 731 F.2d 711, 717 (11th Cir.1984), *cert. denied*, 469 U.S. 1209, 105 S.Ct. 1175, 84 L.Ed.2d 324 (1984), and should issue in only the "clearest and most compelling cases." *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir.1969), *cert. denied*, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d

plaint are governed by the statute as it stood

before the amendment.

121 (1970).[3] In order for a writ to be issued by the court, a three pronged test must be met: (1) the plaintiff must have a clear right to the relief requested; (2) the defendant must have a clearly established duty to do the act in question; and, (3) the plaintiff must have no otherwise adequate remedy. *District Lodge No. 166*, 731 F.2d at 717 (quoting *Carter*, 411 F.2d at 773). Issuance of mandamus is a matter left to judicial discretion. *Id.*

■ The court is not persuaded that any of the three prongs of the above-stated test have been met in the present action. Plaintiff is asking this court to mandate the Defendants set a shrinkage allowance of not less than 4.25% on export peanuts. The supposed authority for this request is found in the language of 7 U.S.C. § 1359(p)(2)(B)(i) (less such *reasonable* allowance for shrinkage as the Secretary *may* prescribe). Congress' use of the words "reasonable" and "may" convince this court of two things: (1) that the court has no authority to set, nor does Plaintiff have a right to, a minimum shrinkage allowance; and, (2) that the setting of a reasonable shrinkage allowance is totally discretionary with the Secretary. This second conclusion is supported by the use of the word "shall" earlier in subsection (p)(2), making certain of the Secretary's actions mandatory. The statutory language does not compel the Secretary to provide for a shrinkage allowance. The provision simply *permits* the Secretary to set a *reasonable* shrinkage allowance if he finds such a necessity. Defendants have no clear duty to set, nor does the Plaintiff have a clear right to a minimum shrinkage allowance. As to any otherwise adequate remedy, non-physical supervision of bail-out is only one of two options to handlers of peanuts; physical supervision is an alternative. Moreover, the handlers can more appropriately lobby for legislative relief. The court finds that mandamus cannot be issued under the present circumstances. Thus, alternatively, Plaintiff's request for a writ pursuant to 28 U.S.C. § 1361 must be DISMISSED.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED and Plaintiff's action is DISMISSED WITH PREJUDICE.

SO ORDERED.

---

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.