Brantley WILLIS, Plaintiff,

v.

The Honorable Kirk FORDICE, Governor of the State of Mississippi, Stuart Irby, Chairman of the Mississippi Gaming Commission, Bill Gresham and Robert Engram, Members of the Mississippi Gaming Commission and Paul Harvey,

Executive Director of the Mississippi Gaming Commission, Individually and Jointly in Their Official Capacities, the Boyd Group of Nevada, Boyd of Mississippi, Inc., The Honorable Bruce Babbit, Secretary of the Interior, The Honorable Ada Deer, Assistant Secretary for Indian Affairs, Tony Hope, Chairman of the National Indian Gaming Commission and Jana McKeag, Member of the National Indian Gaming Commission, Individually and Jointly in Their Official Capacities, Defendants.

Civ. A. No. 3:93–cv–818BN.

United States District Court,
S.D. Mississippi,
Jackson Division.

April 8, 1994.

---

Chokwe Lumumba, Jackson, MS, for plaintiff.

James F. Steel, Mississippi Atty. General's Office; Kathryn H. Hester, Watkins, Ludlam & Stennis; and Mitzi Dease Paige, U.S. Attorney's Office, Jackson, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court on the following motions: (1) Rule 12(b)(6) Motion to Dismiss of Boyd Gaming Corporation and Boyd Mississippi, Inc. ("Boyd"); [1] (2) Rule 12(b)(6) Motion to Dismiss of The Honorable Bruce Babbitt, Secretary of the Interior, The Honorable Ada Deer, Assistant Secretary for Indian Affairs, Tony Hope, Chairman of the National Indian Gaming Commission, and Jana McKeag, Member of the National Indian Gaming Commission ("the Federal Defendants"); and (3) Motion of The Honorable Kirk Fordice, Stuart Irby, Bill Gresham, Robert Engram and Paul Harvey ("the State Defendants") to Dismiss for Lack of Subject Matter Jurisdiction. Having considered the Motions, the responses of the Plaintiff and supporting and opposing memoranda, the Court finds that all three Motions are well taken and should be granted.

### I. Background

This suit is brought by Brantley Willis ("Willis"), a member of the Mississippi Band of Choctaw Indians ("the tribe"), in order to prevent casino gaming on the lands held in trust for the tribe by the United States ("the Mississippi Choctaw lands"). On December 4, 1992, the Honorable Kirk Fordice, Governor of the State of Mississippi ("Fordice"), entered into a Tribal–State Compact ("the Compact") with the tribe for the regulation of Class III ("casino") gaming on the Mississippi Choctaw lands. The Compact was approved by the Secretary of the Interior on January 15, 1993, and notice was published in

---

1. Defendants Kirk Fordice, Stuart Irby, Bill Gresham, Robert Engram and Paul Harvey have joined in the Motion to Dismiss of Boyd. *See* Joinder, filed on January 24, 1994, in the Court file.

the Federal Register on January 29, 1993. Willis filed suit in the Circuit Court of Hinds County, Mississippi, on October 18, 1993. On December 13, 1993, the Circuit Court Judge dismissed the action holding that "the validity of the action by the State is an issue for Federal Court once the Compact has received the required approval of the Department of Interior." Opinion and Order at 3, attached as Exhibit B to Plaintiff's Brief in Opposition to the Motion to Dismiss of the State Defendants. The Circuit Court Judge also concluded that jurisdiction to determine the validity of the actions of the Secretary of the Interior "is clearly in the Federal Courts...." *Id.* at 2. According to the Plaintiff, that decision is currently on appeal to the Mississippi Supreme Court. Willis filed the current action in this Court on December 23, 1993, seeking declaratory and injunctive relief. Willis seeks to have the Compact declared void alleging that Fordice did not have the authority to enter into the Compact on behalf of the State of Mississippi and that the Federal Defendants had no authority to approve the Compact which violates Mississippi law. If the Compact is declared void, according to the Plaintiff, the construction of the casino on tribal lands must halt because neither Boyd nor the tribe would be authorized to continue construction and eventually open the casino.

## II. *Standard for Rule 12(b) Motions*

The Motions in this action by the Federal Defendants and Boyd are filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the purposes of a motion to dismiss under Rule 12(b)(6), all material allegations in Plaintiff's Complaint must be taken as true and construed in the light most favorable to Plaintiff. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). A Rule 12(b)(6) dismissal is not appropriate unless it appears to a certainty that Plaintiff would not be entitled to relief under any set of facts that could be proven. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Rule 12(b)(6) requires dismissal "only if it appears that no relief could be granted under any set of facts that could be proved consistent with the allegation." *Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc.,* 804 F.2d 879, 881 (5th Cir. 1986) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

The Motion filed by the State Defendants is a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter. In deciding this Motion, the Court must determine whether the Eleventh Amendment to the United States Constitution bars a suit against the State Defendants.

### III. *Analysis*

#### A. *The Indian Gaming Regulatory Act*

In *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 221–22, 107 S.Ct. 1083, 1095, 94 L.Ed.2d 244 (1987), the United States Supreme Court held that Indian tribes located within states that permit gaming, even though such gaming may be highly regulated, are entitled to license and operate gaming without state regulation. The Court rejected the argument of the State of California that Congress has given its express consent for states to regulate gaming on Indian reservations in Public Law 280, 18 U.S.C. § 1162:

> [I]f the intent of a state law is generally to prohibit certain conduct, it falls within Pub.L. 280's grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory and Pub.L. 280 does not authorize its enforcement on an Indian reservation. The shorthand test is whether the conduct at issue violates the State's public policy.

*Id.* at 209, 107 S.Ct. at 1088.

In response to the *Cabazon* decision, Congress passed the Indian Gaming Regulatory Act of 1988 ("IGRA") to set forth a statutory framework for the growing industry of Indian gaming. 25 U.S.C. §§ 2701–2721 and 18 U.S.C. §§ 1166–1168.[2] Section 2701 of the

---

**2.** 18 U.S.C. §§ 1166–1168 are criminal regulations pertaining to gaming on Indian lands.

§ 1166(d) grants exclusive jurisdiction over criminal prosecutions of violations of state gambling

IGRA contains Congressional findings concerning gaming on Indian lands, which include, *inter alia,* the following:

Indian tribes have the exclusive right to regulate gaming activity on Indian lands if gaming activity is not specifically prohibited by Federal law and is conducted within a State which does not, as a matter of criminal law and public policy, prohibit such gaming activity.

25 U.S.C. § 2701(5). The statute divides gaming into three classes, each class having a different regulatory scheme. Class I gaming includes social games played for prizes of minimal value and other traditional Indian games. 25 U.S.C. § 2703(6). Class I gaming is within the exclusive jurisdiction of the Indian tribe and is not subject to the provisions of the IGRA. 25 U.S.C. § 2710(a)–(1). Class II gaming includes bingo, certain non-banking [3] card games not prohibited by state law and pull-tabs, lotto, punch boards and other games similar to bingo if played in the same location as bingo. 25 U.S.C. § 2703(7)(A). Class II gaming specifically does not include banking card games, electronic facsimiles of any games of chance or slot machines of any kind. 25 U.S.C. § 2703(7)(B). Class II games are allowed on Indian lands in a state which permits such gaming for any purpose by any person, and is regulated by the National Indian Gaming Commission ("NIGC"). 25 U.S.C. § 2710(b). Class III gaming encompasses all forms of gaming which are not included in Class I or Class II gaming, including casino gaming, slot machines and parimutuel betting. 25 U.S.C. § 2703(8). The parties agree that the gaming which the Plaintiff is seeking to prevent in this case is Class III or casino gaming.

The provisions in the IGRA regarding Class III gaming are very specific:

(1) Class III gaming activities shall be lawful on Indian lands only if such activities are—

(A) authorized by an ordinance or resolution that—

(i) is adopted by the governing body of the Indian tribe having jurisdiction over such lands,

(ii) meets the requirements of subsection (b) of this section,[4] and

(iii) is approved by the Chairman,

(B) *located in a State that permits such gaming for any purpose by any person, organization, or entity,* and

(C) conducted in conformance with a Tribal–State compact entered into by the Indian tribe and the State under paragraph (3) that is in effect.

25 U.S.C. § 2710(d)(1) (emphasis added). *See also* 25 U.S.C. § 2710(d)(2) (setting forth the procedures for adopting an ordinance and submitting such ordinance to the Chairman of the NIGC for approval). In addition to adopting an ordinance, the tribe must attempt to negotiate a Tribal–State compact with the State in which the Indian lands are located.

(3)(A) Any Indian tribe having jurisdiction over the Indian lands upon which a Class III gaming activity is being conducted, or is to be conducted, shall request the State in which such lands are located to enter into negotiations for the purpose of entering into a Tribal–State compact governing the conduct of gaming activities. Upon receiving such a request, the State shall negotiate with the Indian tribe in good faith to enter into such a compact.

(B) Any State and any Indian tribe may enter into a Tribal–State compact governing gaming activities on the Indian lands of

laws to the United States, unless such jurisdiction has been granted to a state by an Indian tribe pursuant to a Tribal–State compact approved by the Secretary of the Interior.

**3.** Non-banking card games are those in which the gamblers compete against each other rather than against the house. *Seminole Tribe of Florida v. Florida,* 11 F.3d 1016, 1019 n. 3 (1994). Banking card games are those such as blackjack, where players play against the house and the house acts as banker. *Cheyenne River Sioux*

*Tribe v. South Dakota,* 3 F.3d 273, 275 (8th Cir.1993).

**4.** Subsection (b) deals with regulation of Class II gaming activity and gives the NIGC oversight over (1) gambling regulations adopted by tribes, (2) what use tribes may make of gambling proceeds, and (3) certain contracts into which tribes may enter regarding their gaming activities. 25 U.S.C. § 2710(b).

the Indian tribe, but such compact shall take effect only when notice of approval by the Secretary of such compact has been published by the Secretary in the Federal Register.

25 U.S.C. § 2710(d)(3)(A) and (B). The Tribal–State compact may contain a variety of provisions, all relating to gaming on tribal lands, including provisions relating to the following:

(i) the application of the criminal and civil laws and regulations of the Indian tribe or the State that are directly related to, and necessary for, the licensing and regulation of such activity;

(ii) the allocation of criminal and civil jurisdiction between the State and the Indian tribe necessary for the enforcement of such laws and regulations;

(iii) the assessment by the State of such activities in such amounts as are necessary to defray the costs of regulating such activity;

(iv) taxation by the Indian tribe of such activity in amounts comparable to amounts assessed by the State for comparable activities;

(v) remedies for breach of contract;

(vi) standards for the operation of such activity and maintenance of the gaming facility, including licensing; and

(vii) any other subjects that are directly related to the operation of gaming activities.

25 U.S.C. § 2710(d)(3)(C). Finally, if a state refuses to enter into negotiations with an Indian tribe regarding Class III gaming, the statute provides procedures for initiating an action in federal district court, mediation between the tribe and the State and, ultimately, prescription by the Secretary of the Interior of the manner in which gaming may take place on Indian lands. 25 U.S.C. § 2710(d)(6). Thus, if a state fails to negotiate with an Indian tribe regarding Class III gaming on Indian lands within that state, the Secretary of the Interior may approve a compact allowing such gaming without any input from the state, provided that the state allows such gaming as a matter of public policy.

Regarding the approval of the compact, the statute provides that "[t]he Secretary is authorized to approve *any* Tribal–State compact entered into between an Indian tribe and a State governing gaming on Indian lands of such Indian tribe." 25 U.S.C. § 2710–(d)(8)(A) (emphasis added). The statute also addresses the conditions under which the Secretary of the Interior may disapprove a Tribal–State compact:

(B) The Secretary may disapprove a compact described in subparagraph (A) *only if such compact violates—*

(i) any provision of this chapter,

(ii) any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands, or

(iii) the trust obligations of the United States to Indians.

25 U.S.C. § 2710(d)(8)(B) (emphasis added). If the Secretary does not approve a Tribal–State compact within 45 days after the date of the submission of such a compact, the compact will be considered to be approved to the extent that it is consistent with the provisions of the IGRA. 25 U.S.C. § 2710(d)(8)(C). One issue which the IGRA does not address, and which is the ultimate issue in this case, is which branch of a state government should negotiate the Tribal–State compact with the Indian tribe.

### B. *Motions to Dismiss*

Motions to Dismiss this case have been filed by the State Defendants, the Federal Defendants and Boyd. Each Motion contains differing theories concerning why the particular Defendants should be dismissed from the case, and the various Motions address some of the same issues. The Court will address the issues which are dispositive of this case, but not necessarily all of the issues raised by each set of Defendants.

### C. *Does Brantley Willis Have Standing to Bring This Action?*

For a plaintiff to establish standing, three requirements must be met:

(1) the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest—and such injury must be concrete and particularized, and actual or

imminent as opposed to merely hypothetical or conjectural;

(2) there must be a causal connection between the injury and the conduct of which the plaintiff complains, that is, the injury must be "fairly traceable" to the challenged action of the defendant and not the result of the actions of some independent third party; and

(3) it must be likely, rather than merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, — U.S. —, —, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351, 364 (1992) (citations omitted). Regarding the first element, particularized injury means an injury that affects the plaintiff in a personal and individual manner. *Id.* at —, 112 S.Ct. at 2136 n. 1, at 364 n. 1. The Court recognizes that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant[s]' conduct may suffice, for on a motion to dismiss [the Court] 'presum[es] that general allegations embrace those specific facts that are necessary to support the claim....'" *Id.* at —, 112 S.Ct. at 2137, at 364 (citation omitted).

■ The Plaintiff's allegations of the injury he will suffer if the casino is allowed to open are found in paragraph 1 of his Complaint:

> BRANTLEY WILLIS is a member of the Mississippi Band of Choctaw Indians who reside on lands within the boundaries of the Mississippi Choctaw who shall be specially, detrimentally and adversely affected by the presence of a casino within the boundaries of his traditional tribal homeland, to-wit; said casino will cause material and irreparable damages by permanently altering Mr. Willis' immediate community in a manner hostile to his traditional and religious beliefs. Mr. Willis also owns an Indian novelty shop, the Casino will bring other businesses into the area of Mr. Willis' business and adversely affect the same. The crime increases in the area will also threaten Mr. Willis' business which is located on the Choctaw reservation in Philadelphia, MS where the Casino will be constructed.

Complaint at 2. For the purposes of determining whether Willis has standing, the Court must assume that all of the allegations set forth in his Complaint are true. Even with the benefit of this assumption, Willis has not asserted facts which would give him standing to pursue this action.

Willis has not asserted facts which support the first element for standing, that he has suffered an injury in fact. The reason Willis fails regarding this element is two-fold: (1) he has no legally protected right to be free from gaming on his tribal homeland; and (2) he has not suffered an individual and particularized injury. In *Cabazon*, the United States Supreme Court held that Indian tribes are entitled to license and operate gaming, without any state regulation, in states which permit such gaming as a matter of public policy. *Cabazon*, 480 U.S. at 221–22, 107 S.Ct. at 1095. *Cabazon* "opened the door to extensive gambling on Indian lands." *Cheyenne River Sioux Tribe v. South Dakota*, 3 F.3d 273, 275 (8th Cir.1993). To provide some statutory framework for regulating such gaming on Indian lands, Congress passed the IGRA in 1988. The IGRA addresses some of Willis' concerns regarding gaming, including the necessity of shielding the tribes from "organized crime and other corrupting influences...." 25 U.S.C. § 2702(2). Therefore, as a matter of federal law under the IGRA and *Cabazon*, Indians have a right to conduct gaming on their lands. Because the tribes have this right, Willis does not have any legally protected right to be free from the operation of a casino on the Choctaw lands near Philadelphia, Mississippi. Because he has no legally protected right, Willis has no standing to bring this action.

Willis also has not shown that he will suffer any individual or particularized harm from the operation of a casino on Choctaw lands. He has not alleged that the harm he could suffer is any different in kind from the harm which might befall other Choctaws on the reservation or other residents in the Philadelphia community. Such concerns are more a matter for political resolution rather than judicial interference. The Court notes that when the matter of casino gaming was put to a vote, the Choctaw tribe voted over-

whelmingly in favor of allowing such gaming on the reservation.[5] Because Willis has not alleged that he will suffer harm which is different from the type of harm which may be suffered by other Choctaws or the community at large, he has no standing to pursue this action.[6]

With regard to the second element for standing, Willis must allege a causal connection between the alleged injury and the conduct by the Defendants. Taking as true all of the allegations in Willis' Complaint, the Court finds that Willis has at least alleged that the actions taken by the various Defendants are the cause of the harm which he alleges he will suffer if the casino is allowed to open.

Finally, Willis must show that it is likely, not merely speculative, that his alleged injury will be redressed by a favorable decision from this Court. The Court finds that Willis has not met this requirement. Even if this Court were to grant the relief which Willis seeks, such relief would only serve to postpone, rather than prevent, casino gaming on the Choctaw reservation.[7] As noted above, the *Cabazon* Court held that Indian tribes may conduct gaming on their lands without state regulation in states which allow such gaming. Even if this Court held that Fordice had no authority to enter into the Compact with the tribe, this holding would only delay the opening of the casino because as a matter of federal law, the Choctaws have a right to conduct gaming on their land. Because Willis' injury would not be redressed by a favorable ruling from this Court, Willis lacks standing to prosecute this action. Alternatively, as set forth below, even if Willis has standing, his case fails on the merits.

### D. Is the IGRA Constitutional?

The State Defendants assert that the current suit is actually a suit against the State of Mississippi, even though it is not styled as such. Therefore, these Defendants assert that suit against them is barred by the Eleventh Amendment to the United States Constitution which bars suit against a state and its officials unless the state has waived its sovereign immunity. Plaintiff asserts that the actions of Fordice in this matter present a perfect *Ex parte Young* situation because he purported to bind the State to a compact while lacking the authority to do so. Plaintiff also asserts that Congress abrogated the Eleventh Amendment immunity of the State when it enacted the IGRA.

The Court is aware that the Circuit Courts of Appeal are not in agreement regarding whether Congress had the power to abrogate the Eleventh Amendment immunity enjoyed by the states when it passed the IGRA which purports to allow a state to be sued in federal district court for failure to negotiate with an Indian tribe regarding gaming on Indian lands within a state. *Cf. Seminole Tribe of Florida v. Florida*, 11 F.3d 1016, 1025–27 (11th Cir.1994) (holding that because the IGRA was enacted under the authority of the Indian Commerce Clause, Congress did not have the power to abrogate the Eleventh Amendment immunity of the states because Congress may only abrogate such immunity under the Interstate Commerce Clause or section 5 of the Fourteenth Amendment) *with Cheyenne River Sioux Tribe v. South Dakota*, 3 F.3d 273, 280–81 (8th Cir.1993) (holding that Congress has the power to

---

**5.** Sixty-nine percent of the tribe voted to allow casino gaming on the reservation. Boyd Brief in Support of Motion to Dismiss at 19.

**6.** Willis asserts that his business will suffer harm because of the competition he will face if the casino is allowed to open. The Court has not been informed by the parties how many independent business owners are currently operating on the Choctaw reservation. The Court assumes that Willis is not the only Choctaw who owns a business on the reservation. As noted in the text, Willis has not stated how his business will suffer harm which is any different from the harm which might be suffered by other businesses cur-

rently in operation on the reservation or in the community.

**7.** The Court notes that the IGRA requires a tribe having jurisdiction over tribal lands "upon which Class III gaming activity *is being conducted, or is to be conducted,* to attempt to negotiate a Tribal–State compact with the state in which such lands are located. 25 U.S.C. § 2710(d)(3)(A) (emphasis added). The Court offers no opinion regarding the meaning of the emphasized language, specifically whether an Indian tribe may begin to conduct Class III gaming on tribal lands before negotiating a Tribal–State compact with the State.

abrogate the Eleventh Amendment immunity of the states under the Indian Commerce Clause and that an express provision for federal jurisdiction over claims arising under the IGRA was sufficient to abrogate such immunity). *See also Spokane Tribe of Indians v. Washington,* 790 F.Supp. 1057, 1061–62 (E.D.Wash.1991) (holding that Congress lacked the power to abrogate the Eleventh Amendment immunity of the states under the Indian Commerce Clause, but, under the doctrine of *Ex parte Young,* the court could order the governor of the state to negotiate with the tribe to comply with the provisions of the IGRA). For the purpose of deciding the current motions, the Court will assume, without deciding, that the provisions under the IGRA, allowing suit to be brought against a state in federal district court, are valid. *See* 25 U.S.C. § 2710(d)(7). Because the Court is making this assumption, the Court need not decide whether the circumstances of this case fall within the "fiction" of *Ex parte Young.*[8]

Alternatively, even if the IGRA is unconstitutional, the Court must adhere to the decisions of the United States Supreme Court. Therefore, under the holding from *Cabazon,* the Court finds that even if Congress lacked the authority to set forth the procedures under the IGRA and abrogate the Eleventh Amendment immunity of the states, gaming must still be allowed on Indian lands. By following the procedures of the IGRA, the State was able to have some input into the manner in which gaming on Indian lands will be conducted in Mississippi. The Court notes that the State was able to obtain considerable concessions from the tribe which will allow state officials to come onto tribal lands and jointly regulate gaming. The Compact will also allow the State to prosecute non-Indians for violations of state law which may occur at the casino. If the IGRA procedures are declared unconstitutional and could be ignored by the State,

under *Cabazon,* the tribe could continue to operate a casino without any state regulation.

The Court notes that the IGRA does not contemplate a suit by an individual against the tribe or the State regarding gaming on Indian lands. The statute provides for federal jurisdiction over the following: (1) suit by an Indian tribe arising from failure of the state to negotiate with the tribe for the purpose of entering into a Tribal–State compact; (2) suit by the state or a tribe to enjoin a Class III gaming activity in violation of a Tribal–State compact; or (3) suit by the Secretary of the Interior to enforce the procedures of the IGRA regarding negotiations between a tribe and a state. 25 U.S.C. § 2710(d)(7)(A). The Plaintiff alleges that the Compact negotiated between Fordice and the Choctaw Tribe is invalid because Fordice lacked authority to enter into such a compact. Therefore, according to the Plaintiff, the Compact could not be valid under federal law because its approval by the Secretary of the Interior could not validate an otherwise invalid agreement. Because such a suit requires the Court to interpret the provisions of the IGRA, the Court finds that federal question jurisdiction is proper in this Court. *See* 28 U.S.C. § 1331.

### E. *Is the Tribal–State Compact Valid Under the IGRA and Mississippi Law?*

■ There is no dispute that the type of gaming which the tribe seeks to operate on the reservation is Class III gaming as that term is defined by the IGRA. For such gaming to be lawful under the IGRA, three requirements must be met: (1) the gaming must be authorized by an ordinance adopted by the governing body of the Indian tribe; (2) the tribe must be "located in a State that permits such gaming for any purpose by any person, organization, or entity;" and (3) the gaming must be conducted in conformance with a Tribal–State compact entered into by the tribe and the State. 25 U.S.C.

---

8. This fiction "allows an individual to obtain a federal injunction against a state officer to force the officer to comply with federal law." *Seminole Tribe,* 11 F.3d at 1028 (citing *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). The doctrine does not apply (1) to com-

pel an executive official to undertake a discretionary task, or (2) if the suit is in reality against the state. *Id.* Because the Court is assuming that the IGRA is constitutional, the Court will not address these particular issues.

§ 2710(d)(1). Willis has contested all three of these requirements.

The tribe authorized an ordinance to allow Class III gaming on the reservation. The statute requires the Chairman of the NIGC to approve the ordinance if it was adopted in accordance with the governing documents of the Indian tribe and if the tribal governing body was not unduly influenced to adopt such an ordinance. 25 U.S.C. § 2710(d)(2)(B). Willis claims that he addressed this issue in the following excerpt from his Complaint:

> [O]n or about December 13, 1993, the National Indian Gaming Commission with notice of case number 93–77–50, approved the Tribe–Boyd of Mississippi gaming contract. Such approval before the court's decision in case number 93–77–50 circumvented the judicial process in bad faith.

Complaint, ¶ 26 at 8. The Court notes, however, that this allegation concerns the management contract between the tribe and Boyd, not the ordinance adopted by the tribe which allows Class III gaming. *See* 25 U.S.C. § 2710(d)(9) authorizing a tribe to enter into a management contract for the operation of Class III gaming if such contract has been submitted to and approved by the Chairman of the NIGC. The approval or denial of such a contract is not a prerequisite which a tribe must meet in order to conduct Class III gaming on tribal lands. Therefore, Willis' challenge to such a contract has no bearing on whether Class III gaming is lawful under the IGRA.

Willis also contests the requirement that gaming be located in a state which permits such gaming by any person, organization or entity. 25 U.S.C. § 2710(d)(1)(B). Willis asserts that neither *Cabazon* nor the IGRA would allow gaming on the Indian lands at issue in this case. Mississippi only allows legalized gaming along the Mississippi River and the Gulf Coast.[9] Therefore, according to Willis, under *Cabazon* and the IGRA, "gaming became available to any Indian tribe within Mississippi *only if* said gaming operation was located along the Mississippi River or on the Gulf Coast." Brief in Opposition to Boyd Motion to Dismiss at 13. Willis misreads the holding in *Cabazon* and the statutory framework of the IGRA.

■ The *Cabazon* Court held that a state which allows gaming as a matter of public policy *must allow such gaming on Indian* lands within that state. 480 U.S. at 209–210, 107 S.Ct. at 1088. Even if a state only allows a limited amount of gaming subject to strict regulations on time, manner and place, that state may not prohibit or even regulate gaming on Indian lands within the state. *Id.* at 221, 107 S.Ct. at 1094. The only question which must be answered is whether the intent of a state law is to prohibit gaming, rather than to regulate such gaming. *Id.* at 209, 107 S.Ct. at 1088. If, as a matter of public policy, gaming is allowed within the state, the state has no right to prohibit or regulate such gaming on Indian lands. *Id.* at 209–210, 107 S.Ct. at 1088. The IGRA, on the other hand, allows some regulation by the state pursuant to a Tribal–State compact. 25 U.S.C. § 2710(d).

In *Mashantucket Pequot Tribe v. Connecticut,* 913 F.2d 1024, 1030–31 (2d Cir.1991), *cert. denied,* 499 U.S. 975, 111 S.Ct. 1620, 113 L.Ed.2d 717 (1991), the court held that Class III gaming must be permitted on Indian lands within Connecticut where the state allowed certain nonprofit organizations to operate such games of chance in the highly regulated form of "Las Vegas nights." The court reasoned that the compact process, which is the centerpiece of the IGRA would become a "dead letter" if "an Indian tribe could nonetheless conduct such gaming only in accordance with, and by acceptance of, the entire state corpus of laws and regulations governing such gaming." *Id.* at 1030–31. The legislative history of the IGRA also supports the conclusion that gaming should be allowed on the Choctaw lands in Mississippi:

---

9. Miss.Code Ann. § 97–33–27 (Supp.1993) provides that gambling shall be allowed on a cruise vessel if such vessel is in the waters "which lie adjacent to the State of Mississippi south of the three (3) most southern counties in the State of Mississippi," or if the vessel is "on the Mississippi River or navigable waters within any county bordering on the Mississippi River...." This section also provides that gambling will only be allowed in these waters if the voters of the respective counties have not voted to prohibit such gambling. *Id.*

"After lengthy hearings, negotiations and discussions, the Committee concluded that the use of compacts between tribes and states is the best mechanism to assure that the interests of both sovereign entities are met with respect to the regulation of complex gaming enterprises such as pari-mutuel horse and dog racing, casino gaming, jai alai and so forth. The Committee notes the strong concerns of states that state laws and regulations relating to sophisticated forms of Class III gaming be respected on Indian lands where, with few exceptions, such laws and regulations *do not now apply*. The Committee balanced these concerns against the strong tribal opposition to any imposition of State jurisdiction over activities on Indian lands. The Committee concluded that the compact process is a viable mechanism for setting [sic] various matters between two equal sovereigns."

*Id.* at 1030 (emphasis added) (quoting Senate Report at 13, U.S.Code Cong. & Admin.News 1988, 3071, 3083).

In this case, the Choctaw Indian tribe in the State of Mississippi is not bound by the requirement that gaming be located on navigable waters, as Willis asserts. Because Mississippi allows such gaming as a matter of public policy, it may not prohibit Class III gaming by the Choctaw Indian tribe on tribal lands. The tribe is only bound by the provisions contained in the Compact between the tribe and the State, not all of the regulations contained in the Mississippi Gaming Control Act. *See* Miss.Code Ann. § 75–76–1 et seq. (1990). The Court therefore concludes that the Choctaw Indian tribe is located in a State that permits Class III gaming "for any purpose by any person, organization, or entity. . . ." 25 U.S.C. § 2710(d)(1)(B).

The final issue under the IGRA is whether the gaming is conducted in accordance with a Tribal–State compact. 25 U.S.C. § 2710(d)(1)(C). This issue requires an interpretation of federal law and Mississippi state law. Willis asserts that Fordice has no

authority under state law to enter into the Compact with the tribe. According to Willis, Fordice has no authority "to bind the State or the legislature to perform extra and/or legislative functions. Only the legislature can pass laws, and the added duties required by this Compact are clearly a usurpation of a legislative function." Brief in Opposition to the Boyd Motion ,to Dismiss at 5.

The Court finds that under state law and federal law the Governor of the State of Mississippi has and had the power to enter into the Compact with the tribe. Miss.Code Ann. § 7–1–13 (1972) provides as follows:

> The governor shall transact all the business of the state, civil and military, with the United States Government or with any other state or territory, except in cases otherwise specially provided by law.

This statute essentially authorizes the governor to transact business with other sovereigns, such as other states, territories [10] or the United States Government. Congress contemplated just such a situation when it enacted the compact process under the IGRA: " '[T]he use of compacts between tribes and states is the best mechanism to assure that the interests of *both sovereigns* are met. . . . The Committee concluded that the compact process is a viable mechanism for setting [sic] various matters between *two equal sovereigns.*' " *Mashantucket Pequot Tribe*, 913 F.2d at 1030 (emphasis added) (quoting Senate Report at 13, U.S.Code Cong. & Admin.News 1988, 3083); *see also Lac du Flambeau Indians v. Wisconsin*, 770 F.Supp. 480, 481 (W.D.Wis.1991) (concluding that "[t]he structure of the Act conforms to the basic principle that the states and tribes negotiate as sovereigns"), *appeal dismissed*, 957 F.2d 515 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 91, 121 L.Ed.2d 53 (1992). Even though the legislative history supports the idea of negotiation between equal sovereigns, the IGRA does not specify which branch of a state government should conduct negotiations with Indian tribes: "Any Indian tribe having jurisdiction over the Indian

**10.** The Court notes that the word territory as used in statutes of other states has been construed to include Indian tribes. *See DeMent v. Oglala Sioux Tribal Court*, 874 F.2d 510, 514 n. 4

(8th Cir.1989) (citing *United States ex rel. Mackey v. Coxe*, 59 U.S. (18 How.) 100, 103, 15 L.Ed. 299 (1856)).

lands upon which a class III gaming activity is being conducted, or is to be conducted, shall request the State in which such lands are located to enter into negotiations for the purpose of entering into a Tribal–State compact governing the conduct of gaming activities." 25 U.S.C. § 2710(d)(3)(A). The Court finds, however, that under Mississippi state law, specifically Miss.Code Ann. § 7–1–13 (1972), that the governor of the State had and has the authority to negotiate with Indian tribes located within the State. Therefore, the Compact negotiated between Fordice and the tribe is valid under Mississippi state law.[11]

The Compact is also valid under the IGRA because it was affirmatively approved by the Secretary of the Interior. Under the IGRA, the Secretary of the Interior may *disapprove* a Tribal–State compact only if the compact violates the IGRA, some other provision of federal law or the trust obligations of the United States to the Indians. 25 U.S.C. § 2710(d)(8)(B). In the present case, the Compact comports with the provisions of the IGRA. Therefore, the Secretary of the Interior was compelled to grant approval to the Compact, and such approval is valid as a matter of federal law.

Willis asserts that the governor has usurped a legislative function. This is simply not the case with regard to the Compact which was negotiated between Fordice and the Choctaw Tribe. The Compact does not contain provisions which are outside the contemplation of the IGRA, notwithstanding Willis' assertions to the contrary. *See* 25 U.S.C. § 2710(d)(3)(C) (set forth in its entirety *supra* at 527).

Willis also complains that certain provisions of the Compact, governing criminal jurisdiction over non-Indians and designation of the tribal lands as a tourism council area,

violate Public Law 280. This law, codified at 18.U.S.C. § 1162, grants six states [12] jurisdiction over criminal offenses committed on Indian lands. *Sycuan Band of Mission Indians v. Roache*, 788 F.Supp. 1498, 1502 (S.D.Cal.1992); *see also* 18 U.S.C. § 1162(a). This statute grants jurisdiction to the named states over criminal/prohibitory laws, but not civil/regulatory laws. *Id.* (citing *Cabazon*, 480 U.S. at 208, 107 S.Ct. at 1088). Apparently, Willis is arguing that because this law does not list Mississippi as one of the named states, any exercise of criminal jurisdiction over persons on Indian lands in Mississippi is a violation of the statute. The IGRA and its legislative history support a finding that a state may exercise limited criminal and civil jurisdiction over Indian lands pursuant to a Tribal–State compact:

> "[U]nless a tribe affirmatively elects to have state laws and state jurisdiction extend to tribal lands, the congress will not unilaterally impose or allow state jurisdiction on Indian lands for the regulation of Indian gaming activities.
>
> The mechanism for facilitating the unusual relationship in which a tribe might affirmatively seek the extension of state jurisdiction and the application of state laws to activities conducted on Indian land is a tribal-state compact. In no instance, does S. 555 contemplate the extension of state jurisdiction or the application of state laws for any other purpose."

*Id.* at 1506–07 (quoting S.Rep. No. 446, 100th Cong., 2d Sess. 5–6, *reprinted in*, U.S.Code Cong. & Admin.News 1988, 3075–76). *See also* 25 U.S.C. § 2710(d)(3). *See also Rhode Island v. Narragansett Tribe of Indians*, 816 F.Supp. 796, 802 (D.R.I.1993) (holding that "the Tribal–State compact process is the exclusive vehicle for state jurisdiction over Class III gaming activities under

---

**11.** The Court is aware of at least one case where the governor of a state was found to lack the authority to enter into a Tribal–State compact with an Indian tribe. *See Kickapoo Tribe of Indians v. Babbitt*, 827 F.Supp. 37 (D.D.C.1993). In that case, the Supreme Court of the State of Kansas determined that the governor lacked such authority, and the Secretary of the Interior abided by that decision and did not approve the compact between the governor and the tribe. *Id.* at 39. In this case, the Mississippi Supreme Court has made no such determination. Therefore, the Court finds that Miss.Code Ann. § 7–1–13 (1972) authorizes the governor of the State of Mississippi to enter into such contracts with other sovereigns, such as the Compact at issue in this case.

**12.** Alaska, California, Minnesota, Nebraska, Oregon and Wisconsin.

§ 2710(d)(1) of the Gaming Act"), *aff'd as modified,* 19 F.3d 685 (1st Cir.1994); the Compact does not address anything other than those issues contemplated by the IGRA under 25 U.S.C. § 2710(d)(3)(A).[13] Because the Compact is valid under federal and state law, and because the tribe and the state have strictly adhered to the provisions of the IGRA governing Class III gaming on tribal lands, this case must be dismissed.[14]

Both the Federal Defendants and Boyd have raised the issue of whether the tribe is an indispensable party which must be joined in this suit pursuant to Rule 19 of the Federal Rules of Civil Procedure. These Defendants then assert that the tribe cannot be joined because it is immune from suit, and thus this case must be dismissed for failure to join an indispensable. The Court need not reach this issue in order to dispose of the Motions in this case.

### IV. *Conclusion*

For the reasons set forth above, the Court finds that the Motions to Dismiss of all the Defendants in this matter should be granted.

IT IS THEREFORE ORDERED that the Rule 12(b)(6) Motion to Dismiss of Boyd is hereby granted.

IT IS FURTHER ORDERED that Rule 12(b)(6) Motion to Dismiss of the Federal Defendants is hereby granted.

IT IS FURTHER ORDERED that the Motion to Dismiss of the State Defendants is also granted.

SO ORDERED.

---

**13.** The Court notes that the IGRA contains an all-encompassing provision stating that a Tribal–State compact may include provisions relating to "any other subjects that are directly related to the operation of gaming activities." 25 U.S.C. § 2710(d)(3)(C)–(vii). The Court has read the Compact attached to the Plaintiff's Complaint and has been unable to discern any provisions which are *not* directly related to the operation of gaming activities. *See United Keetoowah Band of Cherokee Indians v. Oklahoma,* 927 F.2d 1170, 1177 (10th Cir.1991) (concluding that "the very structure of the IGRA permits assertion of state civil or criminal jurisdiction over Indian gaming *only* when a tribal-state compact has been reached to regulate Class III gaming").

**14.** Even if the IGRA did not supersede 18 U.S.C. § 1162, the Court notes that 18 U.S.C. § 1166 is the specific statute governing gambling in Indian country, and thus should take precedence over 18 U.S.C. § 1162. Section 1166 provides that "all State laws pertaining to the licensing, regulation, or prohibition of gambling, including but not limited to criminal sanctions applicable thereto, shall apply in Indian country in the same manner and to the same extent as such laws apply elsewhere in the State." 18 U.S.C. § 1166(a). The statute specifically excludes, however, "Class III gaming conducted under a Tribal–State compact approved by the Secretary of the Interior...." 18 U.S.C. § 1166(c)(2).