Bertney LANGLEY; Leroy Sylestine; Sam Thompson; Johnson Williams; Leola Sylestine; and Laura Thompson

v.

Edwin W. EDWARDS, Governor for the State of Louisiana; the United States Department of the Interior; and Harold Monteau, Chairman of the National Indian Gaming Commission.

Civ. A. No. 94–1953.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Jan. 3, 1995.

J. Arthur Smith, III, Baton Rouge, LA, for plaintiffs.

Constance A. Koury, Baton Rouge, LA, Edward Passarelli, Washington, DC, Carl E. Perry, Lafayette, LA, and Robert Dampf, Lake Charles, LA, for defendants.

*MEMORANDUM RULING*

EDWIN F. HUNTER, Jr., Senior District Judge.

This litigation involves the effort of dissident members of the Coushatta Tribe to

prevent casino gaming on lands held in trust for the tribe by the United States.[1] On October 29, 1994, the Governor of Louisiana entered into a Tribal–State Compact with the Coushatta Tribe, a prerequisite to lawful gambling under the Indian Gaming Regulatory Act of 1988, 25 U.S.C. § 2701 *et seq.* ("IGRA").

Plaintiffs' Motion for Partial Summary Judgment raises the issue of the legality of the gaming casino which is scheduled to open on January 16, 1995. Plaintiffs requested an expedited hearing. The Court responded that it was prepared to grant an expedited hearing as soon as Grand Casinos, Inc. and the Coushatta Tribal Council have been notified of this proceeding. Grand Casinos, Inc. and the Coushatta Tribal Council were notified on December 22, 1994. The issue of the legality of the casino should be resolved prior to its opening to avoid such things as disruption of casino-vendor relationships and the casino workers' premature departure from their current jobs.

The Motion to Dismiss filed by the United States moves the Court pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure (Fed.R.Civ.P.), to dismiss this action against D.O.I. on four grounds:

1) Failure to Join an Indispensable Party,

2) Lack of Standing,

3) Sovereign Immunity, and

4) Failure to Exhaust Tribal Court Remedies.

### Background

Plaintiffs would have this court enter a judgment declaring the casino site was not contiguous to the Coushatta Reservation as it existed on October 17, 1988, and have us set aside the United States Department of the Interior's action, specifically it's (a) finding of contiguity, (b) the approval of the tribal state compact; and (c) the decision to take the parcels into trust for the tribe. Plaintiffs also allege that Governor Edwards did not have authority to enter into the compact with the tribe.

IGRA authorizes and regulates gaming activities on tribal lands. IGRA's stated purpose is, *inter alia,* to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments. 25 U.S.C. § 2701(4). IGRA permits gaming to take place on "Indian lands," 25 U.S.C. § 2710(d)(1). Lands held in trust by the United States generally fall within the locations where gaming can occur. IGRA permits Class III gaming on lands acquired in trust after October 17, 1988, if "such lands are ... contiguous to the boundaries of the reservation of the Indian tribe on October 17, 1988," 25 U.S.C. § 2719(a)(1).

The Coushatta Tribe of Louisiana is a federally-recognized Indian Tribe, with its reservation located in Allen Parish, Louisiana. *See, e.g.,* 40 Fed.Reg. 24220 (1975); Complaint, ¶ 2. The Tribe is governed by a five member Tribal Council. The Tribe in 1992 determined that it wished to engage in gaming activities as permitted by IGRA, and to construct a casino on tribal lands. In the absence of the casino project, the Coushatta Tribe and its members' economic situation was bleak.

However, the Coushatta Tribe's then existing reservation lands were not suitable for gaming activities, given their distance from any highways, current use for other tribal purposes such as housing and health facilities, and other shortcomings. The Coushatta Tribe accordingly determined that it would seek to acquire additional land, contiguous to its reservation, and transfer this land to the United States to be held in trust for the Tribe. This land would overcome all the shortcomings in the reservation lands, and would qualify for Class III gaming under 25 U.S.C. §§ 2703(4)(B) and 2719(a)(1).

The Coushatta Tribe, by duly authorized resolution, first sought to have land taken

---

**1.** 25 U.S.C. permits the Secretary to exercise his authority and acquire land in trust for Indians. The statute designates that the decision to acquire the land in trust is one for his discretion. Then, too, the Secretary has retained the power to waive regulations in "all cases where permitted by law and the Secretary finds that such waiver ... is in the best interest of the Indians." 25 C.F.R. 1.2

into trust, later adding an additional acre for a total of approximately 104 acres. The proposed acquisition consisted of a fairly narrow strip of land coming from the reservation boundary west to U.S. Highway 165, and an approximately 71 acre tract west of the Highway where the casino would be constructed.

The Department of the Interior questioned, however, whether the proposed 104 acre acquisition would be sufficiently "contiguous" to the Coushatta Tribe reservation to qualify under 25 U.S.C. § 2719(a)(1). The concern focused on the fact that the proposed gaming site was to be connected to the pre-existing reservation lands by a fairly narrow strip of land.

The Coushatta Tribe accordingly asked the Department for a determination whether, if an additional 427 acres were acquired, would the entire 531 acres tract be considered contiguous for purposes of Section 2719(a)(1). The Department of the Interior's Office of the Solicitor responded that the 531 acre parcel would qualify as contiguous, whereupon the Coushatta Tribe, by duly authorized resolution, formally requested that the 531 acre tract be taken into trust. The Secretary of Interior did so.

### Failure to Join

Federal defendants have raised the issue of whether the tribe is an indispensable party which must be joined in this suit pursuant to Fed.R.Civ.P. 19. Defendants then assert that the tribe cannot be joined because it is immune from suit, and this case should be dismissed for failure to join an indispensable party. We need not reach this issue because it is apparent that all defendants should be dismissed on other grounds.[2]

### Plaintiffs' Standing

 Do these (dissident) Indian tribe members have standing to initiate an action to have tribal compact entered into pursuant to IGRA declared void?[3] The answer is "No". *See,* Judge Barbour's opinion in *Willis v. Fordice,* 850 F.Supp. 523 (S.D.Miss. 1994).

The Constitution limits the jurisdiction of federal courts to "cases" and "controversies." The doctrine of standing is an essential and unchanging part of the case-or-controversy requirement of Article III. *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984). To survive a standing challenge, the party invoking federal jurisdiction bears the burden of establishing three mandatory elements. *See, FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

Plaintiffs here are dissident tribal members seeking to prevent casino gaming on lands held in trust for the Coushatta Tribe. Whether such individuals have standing to assert such claims was addressed in detail in a recent decision in this circuit, *Willis v. Fordice, supra.* The *Willis* court held that tribal members lack standing to raise such claims. The court applied the three part test for standing established in *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992): (a) the plaintiff must have suffered an injury in fact; (b) an invasion of a legally protected interest—which must be concrete and particularized; there must be a causal connection between the injury and the conduct of which the plaintiff complains; and (c) it must be likely, rather than merely speculative, that the injury will be redressed by a favorable decision. 850 F.Supp. at 527–27. "No litigant in the federal courts may appear as a self designated ombudsman for the rights of others." *La Fargue v. Supreme Court of Louisiana,* 634 F.2d 315 (5th Cir.) *cert. denied,* 452 U.S. 939, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981).

---

2. Note, however, the Ninth Circuit's decisions in *Quileute Indian Tribe v. Babbitt,* 18 F.3d 1456 (9th Cir.1994); and *Confederated Tribes v. Lujan,* 928 F.2d 1496 (9th Cir.1991). "Society has consciously opted to shield Indian tribes from suit without Congressional or tribal consent". 928 F.2d 1496 (9th Cir.1991).

3. A state which allows gaming as a matter of public policy must allow such gambling on Indian land within that state. *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 209–210, 107 S.Ct. 1083, 1088–1089, 94 L.Ed.2d 244 (1987).

The *Willis* court held that the first element could not be established, because individual tribal members have no legally protected right to be free from gaming on their tribal lands, nor do they suffer any individual or particularized injury different from that of any other tribal member. *Id.* at 528. Under both the Supreme Court's decision in *California v. Cabazon Band of Mission Indians, supra,* and the IGRA itself, Indians have the authority to conduct gaming on their lands, and "[b]ecause the tribes have this right, [plaintiffs] do not have any legally protected right to be free from the operation of a casino." *Id.*

Plaintiffs allege that they will suffer irreparable harm by the presence of a casino on the Tribe's reservation but do not state with any specificity what the alleged harm will be. They have not alleged an injury to legally-protected interests and have no individual legal right to determine what sort of business activities there should be on the Coushatta Indian Reservation. That right is vested in the Tribe's duly elected Tribal Council. Even had plaintiffs alleged an injury to a legally-protected interest, there is no certainty any injury to plaintiffs will occur when the Tribe starts operating its casino.

Plaintiffs are purely speculating when they allege that the presence of the tribal casino will cause them harm. If plaintiffs were to suffer harm, that harm would be the result of the independent action of plaintiffs' Tribal Council. Finally, it is not likely that the injuries complained of by the plaintiffs would be redressed by a decision in their favor. The Tribe has not been joined in this action and cannot be joined due to the Tribe's sovereign immunity. We believe the clear line of cases compels the conclusion that plaintiffs lack standing to prosecute this action. Even if we granted relief they seek, such relief would only delay the opening of the casino because as a matter of federal law, the Coushattas have a right to conduct gaming on their Louisiana lands. Under both the Supreme Court's decision in *California v. Cabazon Band of Mission Indians, supra,* and the IGRA itself, Indians have this right to conduct gaming on their lands, and "because the tribes have that right, plaintiffs have no legally protected right to be free from the operation of a casino."

### The Lawsuit should Also be Dismissed Due to the Sovereign Immunity of the United States of America

■ Plaintiffs challenge the Secretary's action in taking the land into trust, seeking to have that action declared unlawful and set aside. Plaintiffs rely upon the alleged non-contiguity of the lands at issue, their opposition to the proposed gaming, and unlawfulness of the Coushatta Tribe–State of Louisiana Compact.

While the lawsuit purports to be brought against the United States Department of the Interior, two courts of appeal have held that lawsuits challenging the decision to take land into trust for Indian tribes constitute actions against the United States, and are barred by its sovereign immunity. *Florida v. United States Department of the Interior,* 768 F.2d 1248 (11th Cir.1985), *cert. denied,* 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986); *Ducheneaux v. Secretary of Interior,* 837 F.2d 340 (8th Cir.), *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988).

The *Florida* plaintiffs attempted to rely upon the waiver of sovereign immunity found in the Administrative Procedure Act ("APA"), the same Act relied upon by plaintiffs here. But the APA's waiver does not apply to federal statutes that forbid the relief sought. *Florida,* 768 F.2d at 1253. Because the Quiet Title Act, 28 U.S.C. §§ 2409(a), 1346(f), 1402(d), does not waive the United States' sovereign immunity for lands held in trust for Indians, the APA's general waiver does not apply. *Id.* at 1253–54.

Thus, although the *Florida* plaintiffs' claims did not seek to quiet title, their challenge to the Secretary's decision taking lands into trust impermissibly conflicted with Congress' effort in the Quiet Title Act "to prohibit third parties from interfering with the responsibility of the United States to hold land in trust for Indian tribes." *Florida,* at 1254–55. The challenge was accordingly dismissed. *Id.; accord, Ducheneaux,* 837 F.2d at 344.

Like the unsuccessful litigants in *Florida*, and *Ducheneaux*, plaintiffs' complaint against the federal defendants must be dismissed.[4]

■ No substantive right exists to challenge the approval on the basis of alleged state law irregularities. The IGRA expresses a congressional policy of putting compacts into force quickly, by requiring the Secretary to approve or reject them within forty-five days of their submission. 25 U.S.C. § 2710(d)(8)(C). During this time, the Secretary must ensure that the compact complies with the IGRA, other *federal* laws, and the United States' trust obligations to the tribe. *Id.* § 2710(d)(8)(B).

Compact approval by the Secretary cannot be invalidated on the basis of a governor's *ultra vires* action, because a contrary rule would compel the Secretary to consider state law before approving any compact. *See, United States v. Brown*, 334 F.Supp. 536, 540 (D.Neb.1971). That "would lead to endless delay". *Id.* Since that result is contrary to the congressional intent expressed in the IGRA, it must be avoided by independent state law challenge. *Kickapoo Tribe of Indians v. Babbitt*, 827 F.Supp. 37 (D.D.C., 1993), appeal pending.

The *Kickapoo* Court ruled: 1) "Regardless of whether the governor had the authority to bind the state, the [Secretary] had an obligation to approve or disapprove of the compact within forty-five days...." and 2) where the Secretary had not disapproved the compact within forty-five days, the provisions of IGRA provide that the compact is considered to be approved. *Kickapoo*, at 44; *see, Willis*, 850 F.Supp. at 533.

■ Plaintiffs assert that the Honorable Edwin Edwards, Governor of Louisiana, had no authority under State Law to enter into the Compact with the Tribe. Because Louisiana allows such gaming as a matter of law, it *may not prohibit Class III gaming by the Coushatta Indian Tribe on tribal lands*. The Tribe is only bound by the Compact between it and the state, not all of the regulations contained in Louisiana gaming statutes. IGRA does not specify which branch of state government should negotiate with the Indian Tribe. Plaintiffs assert that Governor Edwards usurped a legislative function. It is simply not the case with regard to the Compact which was negotiated between Governor Edwards and the Tribe. The Compact is valid under IGRA because it was approved by the Secretary of the Interior. In the present case, the compact comports with the provisions of the IGRA.

### Tribal Remedies Have Not Been Exhausted

■ Assuming *in arguendo*, no indispensability, standing, or sovereign immunity hurdles, there has been no exhaustion of remedies. The tribal court action has been initiated for what is essentially a dispute among members of the Tribe. Tribal sovereignty and Supreme Court pronouncements dictate exhaustion of the tribal remedy. *Warn v. Eastern Band of Cherokee Indians*, 858 F.Supp. 524 (W.D.N.C.1994) ("Nonetheless, such relief is not available until all tribal remedies have been exhausted"); *See, Iowa Mutual Ins. Co. v. La Plante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987); *National Farmers Union v. Crow Tribe*, 471 U.S. 845, 854–855, 105 S.Ct. 2447, 2452–2455, 85 L.Ed.2d 818 (1985). "When the dispute is a 'reservation affair' ... there is no discretion not to defer." *Crawford v. Genuine Parts Co.*, 947 F.2d 1405, 1408 (9th Cir.1991), *cert. denied*, 502 U.S. 1096, 112 S.Ct. 1174, 117 L.Ed.2d 419 (1992); *See also, Smith v. Moffett*, 947 F.2d 442, 444 (10th Cir.1991).

### The Governor

Plaintiffs assert that Governor Edwards has usurped a legislative function and signed a Compact on the basis of the Secretary of the Interior's illegal action in taking title in trust of the property upon which the gaming is to occur. This is simply not the case with regard to the Compact which was negotiated between the Governor and the Coushatta Tribe. The Compact does not contain provisions which are outside the contemplation of the IGRA. The Compact does not address

---

**4.** Because this lawsuit is barred by the United States' sovereign immunity, it must be dismissed. *Block v. Community Nutrition Institute*, 467 U.S. 340, 353, 104 S.Ct. 2450, 2458, 81 L.Ed.2d 270 (1984).

anything other than those issues contemplated by the IGRA under 25 U.S.C. § 2710(c)(3)(A). The Tribal–State Compact entered into pursuant to the Indian Gaming Regulatory Act, between Governor Edwards and the Tribe, for regulation of casino gambling on reservation property, approved by the Secretary of Interior, was valid under state and federal law. Louisiana allowed legalized gaming as a matter of public policy. The Compact was approved by the United States Secretary of the Interior and did not address anything other than issues contemplated by IGRA.

Plaintiffs' dissatisfaction is with the Tribe's decision to permit gaming on tribal lands, and should be properly resolved within the tribal governmental and court structure.

*Conclusion*

Plaintiffs' Motion for Partial Summary Judgment (doc. # 9) is DENIED

Motion to dismiss (doc. # 16) filed by Federal defendants is GRANTED, because of lack of standing, sovereign immunity, and failure to exhaust tribal remedies.

Governor Edwards is dismissed because of plaintiffs' lack of standing and failure to exhaust tribal remedies.

The Motion to Certify Class Action (doc. # 1) is DENIED, as moot.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana on this 3rd day of January, 1995.[5]

---

5. The decision by Secretary of Interior to acquire tract of land in trust for the benefit of an Indian Tribe was unreviewable as within the Secretary's discretion, where Secretary had congressional authority to acquire the land, and Tribe had interest in land before the United States acquired title in trust. *See, S. of Fla. D. of Bus. Reg. v. U.S.D. of Interior*, 768 F.2d 1248 (11th Cir. Court of Appeals, 1985).